Deborah **GARCIA**, Marcella Garcia and Alphonso Garcia, individually; Deborah Garcia, as Personal Representative of the Estate of Ronald Garcia, Deceased, and on Behalf of the Heirs of Ronald James Garcia, Deceased, Plaintiffs-Appellees,

v.

**SALT LAKE COUNTY,**
Defendant-Appellant.

No. 82–1505.

United States Court of Appeals, Tenth Circuit.

July 17, 1985.

William W. Downes, Jr. (Kathryn Collard of Collard, Pixton, Iwasaki & Downes, Salt Lake City, Utah, was also on the brief) for plaintiffs-appellees.

L.E. Midgley, Deputy County Atty. (Ted Cannon, Salt Lake County Atty., and Jerry G. Campbell, Deputy County Atty., Salt Lake City, Utah, were also on the brief) for defendant-appellant.

Before HOLLOWAY, Chief Judge, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Chief Judge.

Plaintiffs, the widow and parents of Ronald James Garcia, brought this action under 42 U.S.C. § 1983 against Salt Lake County, officials of Salt Lake County, and other individual defendants. They also asserted pendent state law claims which are not involved on this appeal.[1] They claimed that the decedent's death was caused by the execution of official policies, practices or customs of defendant Salt Lake County which were deliberately indifferent to the serious medical needs of persons confined in the Salt Lake County Jail before any conviction, and which violated the decedent's constitutional right to receive reasonable and adequate medical care for his serious medical needs.

After trial the jury rendered a special verdict against Salt Lake County and in favor of the other defendants. I R. 186–87. Following entry of judgment against Salt Lake County and denial of post-trial motions, Salt Lake County appealed. We affirm.

## I

After involvement in a traffic accident on December 29, 1977, plaintiffs' decedent was arrested for driving under the influence of alcohol. He complained of back pains and was transported by ambulance to a hospital. In his possession were three bottles of medication prescribed for him after release from the hospital two days earlier, following urinary tract surgery. At the hospital Garcia was lucid, conversive and oriented. He refused to be examined. X R. 391–93. He was left in the examining room alone and while there ingested an overdose of a barbiturate, one of his prescribed medications, and escaped from the hospital. *Id.* at 350–52.

Garcia was found by police officers, passed out on the pavement in the ambulance entrance of the hospital where he was examined by a medical doctor who found him semi-conscious. The doctor had no knowledge Garcia had ingested drugs. Garcia had a strong odor of alcohol on his breath. The doctor asked the officers if he could be medically observed at the jail, and when told that he could, the doctor approved his transfer to the jail. *Id.* at 393–95.

Garcia was transported to Salt Lake County Jail, arriving at 3:43 p.m. on December 29. VIII R. 78. The jail medic was told that a medical doctor had authorized the transfer of Garcia to the jail but that he was to be watched. X R. 390. The jail medic directed that Garcia be placed in a holding cell and instructed that he be checked every 15–20 minutes. VIII R. 69–70. Garcia was checked approximately

---

**1.** On the pendent claim of wrongful death against Glen Lemon, the jail medical technician, the jury found that Lemon was negligent but that his negligence was not a proximate cause of the decedent's death. I R. 187.

every 30 minutes by the search and print officer. *Id.* at 99, 109. At 8:30 p.m. the medic examined Garcia and found him still unconscious. *Id.* at 79. At about 10:15 p.m. Garcia was found apparently dead. IX R. 135. Paramedics were called, and Garcia was immediately transferred to the hospital. *Id.* at 156. He was monitored on life support systems until January 12, 1978. On that date they were discontinued after encephalograms revealed no brain activity, and Garcia died from irreversible brain damage due to lack of oxygen. IX R.242–43.

Dr. Barton, an internist, testified that in his opinion Garcia would have survived the alcohol and barbiturate overdose and could have been stabilized if he had been transported to the hospital when observed at 8:30 p.m. on December 29 and found to be unconscious. IX R. 252–53. Similar testimony was given by Dr. Danto, a physician and board certified psychiatrist, who said that the County did not afford reasonable medical care to Garcia. X R. 340–43, 347.

Following the entry of judgment, after jury trial, against Salt Lake County in the amount of $150,000 plus costs, Salt Lake County filed a motion for judgment notwithstanding the verdict,[2] or alternatively for a new trial or for remittitur. I R. 250, 252–53. Defendant's motion for remittitur was granted in part and denied in part, and the verdict against Salt Lake County was reduced to $147,000 plus costs. The $3,000 reduction in the judgment reflected a credit for a settlement with a former defendant. The County's motions for judgment notwithstanding the verdict and for a new trial were denied. This appeal followed. *Id.* at 278–80.

## II

On appeal, Salt Lake County contends that a municipality may only be liable for a 42 U.S.C. § 1983 violation when an officer or subordinate executes or implements a municipal policy which is constitutionally deficient; that where subordinates do not strictly follow or conform to jail policies, the municipality has no liability under § 1983, particularly when their conduct does not violate civil rights; that the jury failed to follow the court's instructions that a finding of unconstitutional conduct by an officer is a prerequisite to a finding that the County is liable; and that Salt Lake County is therefore entitled to a judgment of no cause of action. For reasons that follow, we disagree with the County's conclusion.

The Salt Lake County Jail had adopted the following written policy statement regarding unbooked arrestees:

> Prisoners who are injured, unconscious, or otherwise in need of immediate care, or diagnosis will be transported to the hospital by the arresting officer (or agency) before the prisoner will be accepted for booking.

Plaintiffs' Exhibit 3. The Salt Lake County Sheriff had the following written policy regarding semiconscious or unconscious prisoners:

> (1) Deputies will not deliver to the County Jail any prisoners who are unconscious or semiconscious and have to be carried into the jail.
>
> (2) All arrested persons in the above stated condition shall be taken directly to the hospital for emergency treatment or medical diagnosis before being booked.

Plaintiffs' Exhibit 4.

Despite these policy statements, there was testimony by Sheriff Larson that there was a policy during all the time he was Sheriff that unconscious individuals who were suspected of being intoxicated were admitted to the jail. IX R. 201–02. This policy or custom was also confirmed by a medical technician, Lemon. VIII R. 72–73. Lemon testified that Dr. Greaves, the jail physician, was also aware of the practice of admitting to jail unconscious people suspected of being intoxicated. *Id.* at 75.

---

**2.** At the hearing on the motions, Salt Lake County moved that "because there was no Motion For Directed Verdict or otherwise" its motion for judgment notwithstanding the verdict be construed as a motion for judgment upon special verdict. XI R. 4.

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), insofar as it held that local governments are wholly immune from suit under § 1983, stating that local governing bodies

> can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, *local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels.*

*Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36. (emphasis added).

When execution of a governmental policy or custom inflicts the injury, "the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2038. Here there was proof that the Salt Lake County jail personnel implemented the policy or custom of admitting to the jail persons in an unconscious condition who were suspected of being intoxicated, IX R. 201–02, 211; VIII R. 72–73, 75, and that the execution of this policy or custom

inflicted the injuries of which plaintiffs complain. Moreover, the record evidence is sufficient to support the jury's finding that the County's policy and practice on medical care violated the established constitutional standard.

■■■ Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). We are mindful that we have held that the use of excessive force on a pretrial detainee does not violate the Eighth Amendment's prohibition of cruel and unusual punishment, while it does constitute a Fourteenth Amendment deprivation of life or liberty without due process; the Eighth Amendment does not apply until after an adjudication of guilt. *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1377 n. 2 (10th Cir.1985). Nevertheless, pretrial detainees are in any event entitled to the degree of protection against denial of medical attention which applies to convicted inmates. Thus it is proper to apply a due process standard which protects pretrial detainees against deliberate indifference to their serious medical needs. *Rock v. McCoy*, 763 F.2d 394, (10th Cir.1985); *Loe v. Armistead*, 582 F.2d 1291, 1294 (4th Cir.1978), *cert. denied*, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980); *Whisenant v. Yuam*, 739 F.2d 160, 163 n. 4 (4th Cir.1984); *see also Dewell v. Lawson*, 489 F.2d 877, 882 (10th Cir.1974). Accordingly, we find no error in the use of the *Gamble* standard by the trial court for determining whether Salt Lake County's policy violated Garcia's constitutional right to receive adequate medical care.[3]

---

3. The court's instruction read in full as follows:

> You are instructed as follows concerning plaintiffs' claim against defendants Salt Lake County, Delmar Larson, Dr. Keith C. Greaves, Ronald Benson, Jeff Hammon, and Glen Lemon, that each of them deprived Ronald James Garcia of his civil and constitutional rights to proper medical care. Under the Due Process Clause of the United States Constitution, every person confined in a jail is entitled to receive certain medical care reasonably designed to

> meet his health care needs. This constitutional right to medical treatments is violated where there is deliberate indifference or gross negligence of jail officials or employees in regard to the serious medical needs of a person confined in jail. Mere negligence is not enough.

> A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that

■ Deliberate indifference to serious medical needs may be shown by proving there are such gross deficiencies in staffing, facilities, equipment, or procedures that the inmate is effectively denied access to adequate medical care. *See Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). Here, there was no physician present at the jail most of the time. IX R. 202. Dr. Keith Greaves, the jail physician, testified that he only came to the jail "three days a week for two hours" to make rounds and prescribe medication. He denied that he was "on twenty-four hour call." *Id.* at 166–67. A nurse was at the jail "four to five hours five days a week." VIII R. 88. A medical technician was on duty from 5 a.m. until 1 p.m. and from 1 p.m. until 9 p.m. His job was to pass out medications to inmates, to assist the doctor on rounds, and to take care of any medical emergencies. As many as 400 inmates could be in jail when the jail was full. *Id.* at 38–39.

Upon Garcia's admission to the jail at about 3:43 p.m., the jail medic directed that

Garcia be placed in a holding cell and instructed that he be checked every 15–20 minutes. *Id.* at 69–70, 78. Garcia was examined only once again by the medic at 8:30 p.m. *Id.* at 79. Garcia was checked approximately every 30 minutes by the search and print officer whose only medical training consisted of training in first aid. *Id.* at 99, 102, 109. No medical personnel were present in the Salt Lake County Jail when Garcia stopped breathing after 9:50 p.m. on December 29, 1977. *Id.* at 95, IX R. 135.

■ We conclude that the jury's finding against the County is supported by sufficient evidence of gross deficiencies and deliberate indifference in staffing and procedures to monitor persons admitted to the jail in an unconscious condition who are suspected of being intoxicated. The record supports the conclusion that the County's policy of admitting to jail unconscious persons suspected of being intoxicated, carried out with the described deficiences and indifference, caused a violation of Garcia's constitutional rights.[4]

even a lay person would easily recognize the necessity for a doctor's attention.

Deliberate indifference to serious medical needs is shown when jail officials or employees prevent a person confined in jail from receiving recommended treatment or deny such person access to medical personnel capable of evaluating their need for treatment. Deliberate indifference to serious medical needs may also be shown by proving a pattern or practice on the part of jail officials or employees, or on the part of the governmental entity operating the jail, showing gross deficiencies in staffing, facilities, equipment, or procedures that effectively deprive persons confined in jail of reasonable and adequate medical care for their serious medical needs.

Thus, if you find that any of the above named defendants knew or should have known that Ronald James Garcia was seriously in need of medical attention, including medical diagnosis and treatment, and that these defendants, or any of them, by their conduct, acts or omissions, with deliberate indifference, failed to afford him reasonable and adequate medical care for his serious medical needs, you must find that each such defendant with respect to whom you have made such a finding by a preponderance of the evidence is liable for the violation of the civil rights of Ronald James Garcia.

I R. 170–71.

4. Appellants cite the plurality opinion in Part III of *City of Oklahoma City v. Tuttle,* — U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), as support for their contention that "[a] municipality may only be liable for a section 1983 violation when an officer or subordinate executes or implements a municipal policy which is constitutionally deficient" and for their contention that "[t]here was no evidence at all that any similar occurrence to the unfortunate facts here, had taken place on a prior occasion in the Salt Lake County Jail" and therefore a policy can not be inferred from this single incident. In *Tuttle* the Court stated that

[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.

*Id.* at ——, 105 S.Ct. at 2436.

As discussed above, denial of Garcia's constitutional right to receive adequate medical care was caused by the existing, unconstitutional County policy or custom. Moreover, this policy was shown in the record to be attributable to the Sheriff of Salt Lake County who had served as Sheriff from 1967 through April of 1978. IX

## III

Defendant Salt Lake County contends that the jury failed to follow the court's instructions that a finding of unconstitutional conduct by an officer is a prerequisite to a finding that the County is liable.[5] Hence Salt Lake County argues that it is entitled to a judgment of no cause of action.

R. 196. The Sheriff is one of the chief elected officials of the County, his office being a co-ordinate office or branch of county government, generally independent of the board of county commissioners, *see Sheriff of Salt Lake County v. Board of Commissioners of Salt Lake County,* 71 Utah 593, 268 P. 783, 785 (1928), with broadly defined important responsibilities. *See* Utah Code Ann. § 17–22–2 (Supp.1983). His duties include taking charge of and keeping prisoners in the county jail, *inter alia. Id.,* subdivision (5). The Sheriff's policy, also attributable to the jail physician, thus qualified as policy attributable to a municipal policymaker under *Monell.* Hence, the judgment here is not at odds with *Tuttle.*

5. The instruction to which defendant refers reads in pertinent part as follows:

If you find that any of the individual defendants violated the civil rights of Ronald James Garcia as plaintiffs have alleged and if you further find by a preponderance of the evidence that at the time of such violation any of said defendants were acting pursuant to the alleged policies, practices, and/or customs of Salt Lake County, and that the alleged policies, practices, and/or customs of Salt Lake County, were, in fact, the policies, practices, and/or customs of Salt Lake County, then you should find that Salt Lake County is liable to the plaintiffs for the violation of the civil rights of Ronald James Garcia.
I R. 174–75.

6. In pertinent part, the special verdicts were as follows:

1. Were the civil rights of the decedent, Ronald James Garcia, violated by the following defendants?

|     |                 | Yes | No  |
| --- | --------------- | --- | --- |
| (a) | Salt Lake County | X   |     |
| (b) | Glen Lemon      |     | X   |
| (c) | Ron Benson      |     | X   |
| (d) | Jeff Hammon     |     | X   |
| (e) | Keith Greaves   |     | X   |
| (f) | Delmar Larson   |     | X   |

In the district court Salt Lake County asked that its motion for judgment notwithstanding the verdict be construed as a motion for judgment upon special verdict,[6] and argued that the "jury verdict is inconsistent with the judgment for the plaintiffs." XI R. 4–5.[7] Citing *Kirkendoll v. Neustrom,* 379 F.2d 694 (10th Cir.1967), the County said that where there is a view of a case that makes a jury's answers to special

2. As to the following defendants, was the violation of the civil rights of Ronald James Garcia a substantial factor in causing his death?

|     |                 | Yes | No  |
| --- | --------------- | --- | --- |
| (a) | Salt Lake County | X   |     |
| (b) | Glen Lemon      |     | X   |
| (c) | Ron Benson      |     | X   |
| (d) | Jeff Hammon     |     | X   |
| (e) | Keith Greaves   |     | X   |
| (f) | Delmar Larson   |     | X   |

. . . .

4. Was defendant Glen Lemon negligent at the Salt Lake County Jail as it related to Ronald James Garcia on December 29, 1977?

Yes   X

No   ___

5. Was the negligence of defendant Glen Lemon at the time and place aforesaid a proximate cause of the death of Ronald James Garcia?

Yes   ___

No   X

6. What sum of money will fully and fairly compensate plaintiffs, Deborah Garcia, Marcella Garcia and Alphonso Garcia, in damages for the death of Ronald James Garcia?

Damages   $150,000

I R. 186–87.

7. We note that the County did not move for a directed verdict. However, we feel that the County can nevertheless make its argument of inconsistency of the verdicts. "A party need not have moved for a directed verdict in order to question on appeal whether the judgment was the proper one to enter on a special verdict." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2510 (1971); *Traders and General Ins. Co. v. Mallitz,* 315 F.2d 171, 175 (5th Cir.1963); *see also Fugitt v. Jones,* 549 F.2d 1001, 1004–05 (5th Cir.1977) (Motion for directed verdict is not required but better practice is to timely move for reconsideration by jury of special verdict answers which are inconsistent.). "In determining whether there is inconsistency in the jury's findings, the findings are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions, and issues submitted." 9 C. Wright & A. Miller, *supra,* at 516.

interrogatories consistent, the case must be viewed in that way, but that here the only way that the verdicts can be reconciled requires a judgment for the defendant County. *Id.* at 5. The district court rejected the County's contention, reasoning that if the County had ten people working for it and following a pattern and practice of the County the jury could find all of them not guilty, and still the cumulative effect of what they did pursuant to the practice or policy of the County could be a violation of the Act by the County. Id. at 7.[8] We agree.

The argument of the County takes too narrow a view of the charge. The opening paragraph of Instruction No. 14 also dealt with the liability of the County and stated:

> Salt Lake County is a defendant in this action and should be found liable to respond to the plaintiffs in damages if you find by a preponderance of the evidence that there existed a policy, practice or custom of the kind described in these instructions and which itself substantially contributed to the violation of Mr. Garcia's civil right to adequate medical care. Although Salt Lake County is not responsible for each act committed by its individual employees, Salt Lake County should be held liable for actions which are taken by its employees which are taken pursuant to a policy, custom or practice of Salt Lake County.

8. The district court stated:
   Well, let's meet that head on. I mean, certainly, if you have got ten people working for the county and all of those people working for the county are following a pattern and practice that has been laid down by the county, I think the jury could find all ten of those people not guilty or not responsible under the Civil Rights Act. But the cumulative effect of what they do pursuant to some practice or policy of the county could constitute a violation of the Civil Rights Act as against the county. I don't—
     *    *    *    *    *    *
   Well, this case is kind of a classic case of where they might have found that. I mean, they find that when he first comes in, maybe there wasn't enough inattentiveness on the part of the initial jailers to find them responsible under the Civil Rights Act. Then other

I R. 174. Instruction 11, quoted in note 3 *supra,* also stated alternative ways of showing deliberate indifference to serious medical needs by jail officials or employees, "or on the part of the governmental entity operating the jail...." I R. 170.

*Monell* does not require that a jury find an individual defendant liable before it can find a local governmental body liable. The language of § 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell,* 436 U.S. at 692, 98 S.Ct. at 2036. Although the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights. This basis for a finding of liability against only the County is consistent with the charge, viewed as a whole, and the rationale by the trial judge. *See* note 8, *supra.* Therefore, we are convinced that there was no fatal inconsistency in the special verdicts viewed in light of the charge as a whole.

## IV

■ In sum, the defendant County of Salt Lake has not demonstrated any reversible error and the judgment is accordingly affirmed. Plaintiffs-appellees request that this court award them their costs and attorney's fees incurred on this appeal. They

> jailers come on and they don't do much. Then others don't do much, and the cumulative effect of the whole thing and the lack of training—not training, but the lack of supervision and lack of medical care or provision for being taken to a hospital, which is the county's policy, is what is violative of the Civil Rights Act.
> XI R. 5–6.
> For example, in *Smith v. City of Oklahoma City,* 696 F.2d 784 (10th Cir.1983), a § 1983 action was brought against the City of Oklahoma City and four individual police officers. During trial the police officers were dismissed as parties to the action. The jury returned a verdict in favor of Oklahoma City. We reversed, finding that the trial court should have ruled that the City violated plaintiff's constitutional rights. *Id.* at 787.

are entitled to recover such fees under 42 U.S.C. § 1988, and the cause is remanded to the district court for proceedings to determine such fees. *In re Kansas Congressional Districts Reapportionment Cases,* 745 F.2d 610 (10th Cir.1984). An award of costs of the appeal will be entered for plaintiffs on consideration of their bill of costs and any objections thereto. *See* Rule 39, F.R.A.P.

IT IS SO ORDERED.