909 F.2d 402
 Kathy MARTIN, Plaintiff-Appellee,
v.
BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF PUEBLO;
Florence Chacon; Patrick Fleming; Pueblo,
Colorado Sheriff's Department; Sheriff
Larry E. Buckallew,
Defendants-Appellants,
and
Does I Through X, Defendant.
 No. 89-1210.
 United States Court of Appeals,
Tenth Circuit.
 July 18, 1990.
 
 Terry Tomsick, Aspen, Colo., for plaintiff-appellee.
 Cathy S. Harris and Diane L. Vaksdal, of Hall & Evans, Denver, Colo., for defendants-appellants.
 Before LOGAN, JONES,* and SEYMOUR, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an interlocutory appeal[1] from an order of the district court denying summary judgment sought on immunity grounds by the individual defendants named in plaintiff's civil rights/tort suit. We affirm.
 
 I.
 
 2
 Plaintiff alleged in her complaint that throughout her arrest at Parkview Hospital in Pueblo, Colorado for failure to appear on a speeding violation, and her subsequent transportation to and brief detention at the Pueblo County Jail, the conduct of defendant deputies Chacon and Fleming violated her fourth amendment right to be free from the use of excessive force during arrest and her fourteenth amendment due process right to adequate regard for her medical needs during pretrial detention. Defendants moved for summary judgment based on absolute or, alternatively, qualified immunity.
 
 
 3
 The evidence submitted on summary judgment consisted of several affidavits by the parties and other witnesses. Defendants' stated in their affidavits that on December 11, 1987, they were instructed to execute an arrest warrant against plaintiff, who was to be released that day from the hospital, and that they verified the warrant by telephone after locating plaintiff. Defendants asserted that both plaintiff and an unidentified nurse said plaintiff could walk out of the hospital, that defendants offered to obtain plaintiff a robe which she declined, and that they then escorted her out of the hospital and into a police van. Defendants drove the van at less than five m.p.h. to the county jail, and plaintiff was released on bond approximately one and one-half hours after she was arrested. Officer Rusick, who received the request from the Canon City Police Department to pick up plaintiff upon her release from the hospital, stated in his affidavit on behalf of defendants that he instructed defendants to execute the warrant and verified the warrant upon defendants' telephone inquiry.
 
 
 4
 Plaintiff's affidavits contained significant details absent in defendants' account. Both plaintiff and her mother, a physician present at the hospital when defendants arrived, attested that plaintiff had been in a serious accident on December 5, resulting in a fractured neck requiring a brace and hospitalization until December 11. Plaintiff and her mother informed defendants of her condition, the risk of injury--including paralysis--should she be moved other than by wheelchair or gurney, and that she was to be released only to the care of her parents (both medical doctors) and returned to bed under instructions from her attending physician. Defendants replied by threatening plaintiff with handcuffing and her mother with arrest. In response to plaintiff's mother's request that defendants at least contact plaintiff's attending physician before moving her, defendants stated that no calls would be made and that plaintiff would be taken to the county jail "no matter what." As a result of being required to walk, inadequately clothed, to the van, climb in, ride to the jail, make her way inside and then sit there for another hour without medical attention, plaintiff asserts that her existing neck injury was aggravated, causing additional physical and emotional pain, medical expense, and lost earnings.
 
 
 5
 Against this evidentiary background, the district court held that two constitutional claims--excessive force in arrest and inadequate medical attention--could be made out, both of which involved conduct violative of standards clearly established at the time the operative events occurred. Defendants maintain that the district court erred in rejecting their qualified immunity defense on this basis, and in denying their claim to absolute immunity. Our task on appeal is to
 
 
 6
 review the summary judgment [determinations] de novo, applying the same legal standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we are to examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir.1988).
 
 
 7
 Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990).
 
 II.
 
 8
 Defendants rest their claim to absolute "quasi-judicial" immunity on Valdez v. City and County of Denver, 878 F.2d 1285 (10th Cir.1989), where we held that several peace officers who had enforced a state court's contempt order were absolutely immune from damages for the contemnor's claims of false arrest and imprisonment. See also Henry v. Farmer City State Bank, 808 F.2d 1228, 1238-39 (7th Cir.1986) (law enforcement officers have absolute immunity in executing facially valid court order). While the immunity granted in Valdez protects defendants from liability for the actual arrest, it does not empower them to execute the arrest with excessive force or a deliberate indifference to an individual's known medical needs.
 
 
 9
 In Valdez, we repeatedly emphasized our concern that law enforcement officers not become scapegoats for unconstitutional court orders simply by virtue of their status as the only available targets for challenging the authority of the immune judicial official actually responsible:
 
 
 10
 Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. If losing parties were free to challenge the will of the court by threatening its officers with harassing litigation, the officers might neglect the execution of their sworn duties....
 
 
 11
 ....
 
 
 12
 To force officials ... to answer in court every time a litigant believes the judge acted improperly is unacceptable.... [I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them. Denying these officials absolute immunity for their acts would make them a "lightning rod for harassing litigation aimed at judicial orders."...
 
 
 13
 878 F.2d at 1288-90 (footnotes and citations omitted). The holding in Valdez was, accordingly, expressed specifically in terms of the direct relationship between the challenged conduct and the underlying directive of the court: "In this case, we hold that an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order." Id. at 1286 (emphasis added).
 
 
 14
 Neither the rationale nor the express holding of Valdez supports defendants' argument that peace officers are absolutely immune from liability for the manner in which they carry out otherwise proper court orders.[2] To the contrary, a judicial warrant contains an implicit directive that the arrest and subsequent detention be carried out in a lawful manner. Insofar as defendants exceeded legal bounds in executing the warrant for arrest, defendants have a fortiori violated the very judicial order under which they seek the shelter of absolute immunity.[3] Regardless of whether the absolute immunity granted by Valdez with respect to enforcement of judicial contempt orders extends to bench warrants of the sort involved here,[4] an issue we need not reach, defendants are not entitled to quasi-judicial immunity. We conclude that absolute immunity does not protect defendants from damage claims directed not to the conduct prescribed in the court order itself but to the manner of its execution. See Turney v. O'Toole, 898 F.2d 1470, 1474 (10th Cir.1990).
 
 III.
 
 15
 Turning now to defendants' qualified immunity defense, we must determine whether a reasonable officer could have believed the manner of plaintiff's arrest and detention in this case to be constitutionally permissible, in light of clearly established law and the information defendants possessed at the time. See Anderson v. Creighton, 483 U.S. 635, 640-41, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987); see also Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).
 
 
 16
 In reviewing qualified immunity questions at the summary judgment stage, we employ the following analysis:
 
 
 17
 Once the defense has been raised and the plaintiffs have met their burden of identifying both the clearly established law that the government official is alleged to have violated and the conduct that violated that law, the defendant must demonstrate that no material issues of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time. A defendant who makes such a showing of objective reasonableness is entitled to summary judgment unless the plaintiff can demonstrate that there are factual disputes relevant to the defendant's claim to immunity.
 
 
 18
 Zuchel v. Spinharney, 890 F.2d 273, 274 (10th Cir.1989) (quoting Coen v. Runner, 854 F.2d 374, 377 (10th Cir.1988)).
 
 
 19
 Plaintiff has identified both a due process right to medical attention afforded to pretrial detainees under the fourteenth amendment, and a right not to be unreasonably seized by the use of excessive force in violation of the fourth amendment. We analyze each right in turn.
 
 A. Fourteenth Amendment Due Process
 
 20
 More than two years prior to the events underlying the present suit, we held in Garcia v. Salt Lake County, 768 F.2d 303, 307 (10th Cir.1985), that pretrial detainees are entitled under the fourteenth amendment's due process clause to the same degree of protection regarding medical attention afforded convicted inmates under the eighth amendment. Plaintiff has thus identified a clearly established constitutional standard by which her inadequate medical attention claim must be judged in the familiar "deliberate indifference to serious medical needs" test of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Garcia, 768 F.2d at 307.
 
 
 21
 Plaintiff's allegations hold up well under this test because they implicate serious medical concerns and cannot be characterized as involving either simple inadvertence or a mere difference of professional medical opinion. See generally Reed v. Dunham, 893 F.2d 285, 286-87 (10th Cir.1990). Moreover, it is of particular significance in this case that "[d]eliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a pre-trial detainee, but also by 'intentionally interfering with the treatment once prescribed.' " Aldridge v. Montgomery, 753 F.2d 970, 972 (11th Cir.1985) (quoting Estelle, 429 U.S. at 105, 97 S.Ct. at 291); see also Payne v. Lynaugh, 843 F.2d 177, 178 (5th Cir.1988); West v. Keve, 571 F.2d 158, 160-63 (3d Cir.1978). Plaintiff's affidavits raised factual questions whether defendants deliberately disregarded the medical information and warnings given by plaintiff's mother regarding her daughter's serious, fragile condition, and refused her request that they contact the attending physician for instructions before moving plaintiff. Defendants failed to demonstrate that their actions were objectively reasonable in light of the then-extant clearly established standards. The district court therefore had ample basis upon which to reject defendants' qualified immunity defense to the inadequate medical attention claim.
 
 B. Fourth Amendment
 
 22
 The same conclusion is equally warranted with respect to plaintiff's excessive force claim. Defendants argue that "[i]t is not clearly established that a plaintiff can bring a claim for excessive force where no force is applied. Instead, every case decided to date has involved the application of physical force to the plaintiff." Appellants' Brief at 14. Defendants cite Graham v. Connor, --- U.S. ----, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), to support their argument. In setting out the controlling analysis for excessive force claims, however, the Supreme Court there indicated that actual physical touching was not necessary to establish the threshold requirement of a seizure of the person. Rather, "[a] 'seizure' ... occurs only when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen' " Id., 109 S.Ct. at 1871 n. 10 (emphasis added). Physical contact is similarly not required to demonstrate the unreasonableness of the force used to effect a particular seizure. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 1871 (emphasis added).
 
 
 23
 Defendants have not identified a single case stating that proof of physical contact is an essential element of an excessive force claim. To the contrary, courts have recognized excessive force claims where the force is expressed by means other than physical contact. In Gumz v. Morrissette, 772 F.2d 1395, 1399-1402 (7th Cir.1985), cert. denied, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986), overruled on other grounds, Lester v. City of Chicago, 830 F.2d 706, 709-13 (7th Cir.1987), for example, the Seventh Circuit held that evidence of a display of deadly force was sufficient to support a jury finding that arresting officers maliciously had used excessive force, although the court ultimately rejected the plaintiff's 42 U.S.C. Sec. 1983 claim because of a lack of injury. See also Black v. Stephens, 662 F.2d 181, 189 (3d Cir.1981) (unwarranted display of firearm and threat to shoot held sufficient basis for jury verdict for plaintiff), cert. denied, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982).
 
 
 24
 In Wise v. Bravo, 666 F.2d 1328, 1333-35 (10th Cir.1981), the plaintiff's excessive force claim based on an officer's threatened use of mace failed not for lack of physical contact, but because plaintiff did not effectively demonstrate an assault claim sufficiently egregious to be of constitutional dimensions. Id. at 1335. The relevant factors discussed in Wise include "the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer."[5] Id. at 1333 (emphasis added); see also Hewitt v. City of Truth or Consequences, 758 F.2d 1375, 1379 (10th Cir.1985). It would require a perverse reading of the rule in these cases to conclude that officers can employ whatever threat or nonphysical force they want, regardless of the amount of injury inflicted, so long as no physical contact exists. Our cases at the time of defendants' actions clearly directed otherwise.
 
 
 25
 The cited cases expose as unfounded defendants' broad assertion that no precedent favorable to noncontact excessive force claims existed at the time the alleged wrongful acts took place. Plaintiff has demonstrated that defendants' alleged deliberate and unreasonable conduct in effecting her arrest created a serious known risk of physical trauma resulting in aggravation of an existing fracture to her neck in violation of clearly established law.
 
 
 26
 Defendants have not shown how their conduct was objectively reasonable in light of the above-described law. Their position that they cannot be held liable simply because they did not actually strike the operative "blows" is untenable, and their claim to innocent ignorance of any contrary standard of conduct is disingenuous. We discern no reason to attach any constitutional significance to the fact that defendants were able to effect plaintiff's allegedly improper and physically harmful removal from the hospital without actually touching her. The absence of authority on all fours with the unusual facts of this case should not be considered fatal to plaintiff's claim, in light of the patently insubstantial character of the distinction upon which defendants' qualified immunity argument rests. See Anderson, 483 U.S. at 640, 107 S.Ct. at 3039 ("That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent") (citation omitted).
 
 
 27
 The order of the United States District Court for the District of Colorado denying defendants' motion for summary judgment on immunity grounds is AFFIRMED, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Nathaniel R. Jones, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 Plaintiff did challenge, in summary fashion, the validity of the warrant itself, but the district court's dismissal of that claim for lack of any evidentiary support, see Mem.Op. at 7-8, is not before the court on this appeal. Consequently, we do not consider defendants' entitlement to immunity with respect to such a claim
 
 
 [3]
 For similar reasons, defendants' contention that Colo.Rev.Stat. Sec. 16-1-104(18) (1973), which simply instructs that a warrant "is a written order issued by a judge of a court of record directed to any peace officer commanding the arrest of the person named or described in the order," somehow constrained them, under sanction of law, to act as they did, thereby excusing whatever misconduct occurred during plaintiff's arrest, is frivolous. Such a view effectively would nullify the settled and salutary constitutional prohibition on excessive force with respect to all arrests made pursuant to warrant
 
 
 [4]
 Compare Duba v. McIntyre, 501 F.2d 590, 592 (8th Cir.1974) (quasi-judicial immunity accorded officer who executes bench warrant), cert. denied, 424 U.S. 975, 96 S.Ct. 1480, 47 L.Ed.2d 745 (1976) with Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 228 (1st Cir.1990) (marshall not entitled to absolute immunity for plaintiff's arrest on bench warrant); and Barr v. Abrams, 810 F.2d 358, 362 (2d Cir.1987) (actions in executing bench warrant protected by qualified immunity). Cf. Malley v. Briggs, 475 U.S. 335, 339-45, 106 S.Ct. 1092, 1095-98, 89 L.Ed.2d 271 (1986) (police officer not absolutely immune for procuring arrest warrant, notwithstanding judge signed warrant)
 
 
 [5]
 We also recognize that prior to the Graham decision in 1989, the circuit courts had not clearly settled whether the objective fourth amendment "reasonableness" standard already employed by the Supreme Court in Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) to evaluate a claim for improper use of deadly force in arrest would also apply to claims involving excessive but nondeadly force in arrest. The use of nondeadly force had previously been analyzed generally under a subjective and more onerous substantive due process standard requiring, in addition to undue force, personal malice amounting to an abuse of official power sufficient to "shock the conscience." Compare Trujillo v. Goodman, 825 F.2d 1453, 1458 (10th Cir.1987) (applying substantive due process standard) with Lester, 830 F.2d at 713 (adopting fourth amendment standard). See generally Graham, 109 S.Ct. at 1869-70. This uncertainty in the law does not affect our disposition in the present case, however, since plaintiff's allegations describe official conduct sufficiently reprehensible to constitute a clear violation of either standard