194 F.3d 341 (2nd Cir. 1999)
 KEVIN BARRETT, Plaintiff-Appellant,
v
ORANGE COUNTY HUMAN RIGHTS COMMISSION, COUNTY OF ORANGE, HUBERT LEE, sued in his individual capacity and ANGELA COLONNA, sued in her individual capacity, Defendants-Appellees.
 Docket No. 98-7752
August Term, 1998
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: May 4, 1999
Decided: October 07, 1999
 
 Appeal from a judgment of the United States District Court for the Southern District of New York (Richard C. Casey, Judge) dismissing the plaintiff's complaint in his action under 42U.S.C.1983 and the New York State Constitution following a jury trial. We conclude that the district court erred in holding as a matter of law that because the jury found the individual defendants Hubert Lee and Angela Colonna not to be liable to the plaintiff, defendants Orange County Human Rights Commission and the County of Orange could not be liable either. We affirm the judgment of the district court as to the individual defendants but vacate and remand the district court's judgment as to the Commission and the County.
 Affirmed in part, vacated in part, and remanded.[Copyrighted Material Omitted]
 MICHAEL H. SUSSMAN, Goshen, NY, for Plaintiff-Appellant.
 KEVIN F. PRESTON, MacVean, Lewis, Sherwin & McDermott, Middletown, NY, for Defendants-Appellees County of Orange and Orange County Human Rights Commission.
 DANIEL J. SCHNEIDER, Drake, Sommers, Loeb, Tarshis & Catania, Newburgh, NY, for Defendants-Appellees Hubert Lee and Angela Colonna.
 Before: CABRANES and SACK, Circuit Judges, and SHADUR, District Judge.*
 SACK, Circuit Judge:
 
 
 1
 In early 1997, the Orange County Human Rights Commission fired its Executive Director, the plaintiff Kevin Barrett, after a series of disputes between him and members of the Commission. Barrett brought an action in the United States District Court for the Southern District of New York (Richard C. Casey, Judge) pursuant to both 42 U.S.C. 1983 and the New York State Constitution against the defendants Orange County Human Rights Commission and the County of Orange (together, the "municipal defendants"), and Commissioners Hubert Lee and Angela Colonna (together, the "individual defendants"), alleging that the defendants fired him from his position as Executive Director in retaliation for his "speaking out on matters of public concern." He asserted that his termination violated the First Amendment of the United States Constitution and provisions of the New York State Constitution guaranteeing freedom of speech. A jury returned a verdict in favor of all the defendants. The district court denied Barrett's motion for a new trial and entered judgment dismissing his complaint.
 
 
 2
 On appeal, Barrett argues that the district court made several erroneous evidentiary rulings that (1) deprived him of the opportunity to prove to the jury that the reasons proffered by the defendants for terminating his employment were pretextual and (2) permitted the defendants to establish to the jury's satisfaction through the use of inadmissable hearsay that Barrett was terminated for legitimate reasons. Barrett also asserts that the district court was incorrect as a matter of law when it instructed the jury to return a verdict for all the defendants once it determined that the individual defendants were not liable. He argues that under Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56L.Ed.2d 611 (1978), municipal liability need not be predicated on individual liability, and that the district court should have let the jury decide whether the municipal defendants were independently liable. Finally, Barrett contends that the district court erred when it declared sua sponte that the individual defendants were immune from suit under state law and when it instructed the jury that liability of the municipal defendants under state law could not be based on principles of respondeat superior.
 
 
 3
 We disagree with Barrett's contention that the district court erred in its evidentiary rulings and we affirm the district court's judgment, based on the jury's finding that the individual defendants did not infringe Barrett's federal or state constitutional rights, that they are not liable to him. We do not decide whether the jury should have been permitted to find that the individual defendants were not immune from liability on the state constitutional claim. Because the individual defendants have been found not to have infringed Barrett's rights, their immunity is no longer of any consequence. We also do not decide whether the jury should have been permitted to find the municipal defendants liable on the state constitutional claims under the doctrine of respondeat superior. Inasmuch as the individual defendants' conduct was found not to be wrongful, there was no misbehavior on their part for which the municipal defendants could be held vicariously liable on a respondeat superior theory. We agree with Barrett, however, that the district court erred as a matter of law when it determined that the municipal defendants' liability was contingent upon the liability of the individual defendants. The district court should have allowed the jury to decide whether the municipal defendants were liable irrespective of the liability of the individual defendants. We therefore vacate the district court's judgment as it relates to the municipal defendants and remand for a new trial to determine whether Barrett's claims against them are meritorious.
 
 BACKGROUND
 
 4
 The primary function of the Orange County Human Rights Commission (the "Commission") is to receive, investigate and in appropriate circumstances prosecute complaints of human rights infringements in Orange County. Plaintiff Barrett became Executive Director of the Commission in March 1994. His responsibilities included receiving and investigating complaints of discrimination based on race, religion, or national origin and alleged violations of state human rights laws; planning and developing programs to eliminate such discrimination; and participating in public-speaking engagements and news media promotions to enhance awareness of such discrimination. As Executive Director, he also was responsible for establishing and maintaining "working relationship[s]" with businesses, local governmental units, civic groups, and other professional organizations, and for organizing neighborhood groups to counter discrimination. Barrett reported directly to the Commission, although it did not supervise him on a day-to-day basis.
 
 
 5
 Defendants Lee and Colonna were members of the Commission during the relevant period of time. Lee was Acting Chair of the Commission from September 1996 until the following January, and Chair thereafter.
 
 
 6
 In August 1996, Anibal and Margarita Rodriguez alleged in a complaint to Barrett that Orange County Jail ("OCJ") personnel had caused a dog to bite their son, severely injuring him. After performing a preliminary investigation into the allegation and deciding that the case was not within the Commission's jurisdiction, Barrett forwarded the Rodriguez complaint together with a report of his preliminary investigation to the New York State Commission on Corrections and the Orange County District Attorney's office. Barrett apparently did not notify or interview officials at the OCJ about the incident.
 
 
 7
 Barrett informed the Commission about the Rodriguez case, including his report to the New York State Corrections Commission, at the Orange County Human Rights Commission's regular monthly meeting on September 18, 1996. The Commission authorized Barrett to continue his investigation, specifically instructing him to determine why dogs were used at the OCJ, and to report his findings at the Commission's October meeting. In conducting his investigation, Barrett did not interview the jail's administrator or any other senior OCJ official. His October report to the Commission instead relied on an interview with "an assistant to the jail administrator."
 
 
 8
 With Barrett's knowledge and permission, but without Barrett giving the commissioners advance notice, a newspaper reporter attended the October meeting. The commissioners considered the reporter's presence inappropriate because of the sensitive nature of the dog-biting incident upon which Barrett was reporting. Defendant Lee testified at trial that Barrett's decision to allow the reporter to attend demonstrated that Barrett had "his own agenda." At the end of the October meeting, therefore, the Commission adopted a new rule that required that the Chair be notified before any member of the public was invited to attend a Commission meeting.
 
 
 9
 The commissioners, without Barrett, visited the OCJ. During the tour, the jail administrator attempted to explain the OCJ's use of dogs and expressed his disappointment with the manner in which Barrett had handled the Rodriguez case. The county sheriff was "concerned" that Barrett had reported the case to the press without first talking to him.
 
 
 10
 In early December 1996, the commissioners met in executive session to revise the written policy and procedure guidelines governing the operation of the Commission. The previous set of guidelines had been issued in March 1996, before defendant Lee had become either Chair or Acting Chair. In addition to the commissioners, also present at the December meeting were the County Executive, Joseph Rampe; his assistant, Tonie Murphy; the County Attorney, Richard Golden; and a former commissioner. Barrett was not asked to attend.
 
 
 11
 At this meeting the commissioners discussed their concerns about Barrett's performance. Golden recommended to the commissioners that they state in writing the specific guidelines to which they wanted Barrett to adhere. The former commissioner also used the occasion to explain her reasons for resigning from the Commission, one of which was Barrett's assertedly inadequate communication with the commissioners.
 
 
 12
 The Commission then drafted new office policies and procedures, dating them December 11, 1996. Barrett and his assistant Susan Varden were given these guidelines at the Commission's regular monthly meeting on December 17, 1996. The commissioners asked Barrett and Varden to comment on the new rules; Varden did, Barrett did not. On December 20, 1996, however, Barrett told Commissioner Rivera that he was unhappy with the December guidelines and that, in Rivera's words, "he was going to do it his way." According to several commissioners, shortly thereafter Barrett began to violate the December guidelines by, for example, being absent from work without appropriate consent from or notification to a commissioner. According to defendant Colonna, when Barrett was confronted with his transgressions, his attitude was that "[h]e didn't need to be accountable to anybody. He specifically stated . . . that, 'What I can do in one half hour, no other man can do in 24 hours.'"
 
 
 13
 On January 18, 1997, defendant Colonna placed a letter in Barrett's personnel file criticizing various aspects of his job performance. Copies of the letter were sent to Barrett and to the other commissioners. On January 19, the Commission met in executive session to discuss Barrett's behavior and a draft performance evaluation was distributed. It detailed complaints about his behavior including lateness to and absence from work, lack of communication with the commissioners, and his invitation of the reporter to the October meeting without notice to the commissioners. During the days that followed, some of the commissioners reviewed other aspects of Barrett's performance, such as his failure to record his time at work accurately.
 
 
 14
 On January 23, 1997, the Commission voted unanimously to terminate Barrett's services. On January 24, defendants Lee and Colonna gave Barrett his termination letter. Barrett contested its accuracy. Barrett later testified that prior to the delivery of the letter no one had complained about his job performance, his absences from work, the hours he kept, or anything else cited in the letter as a reason for his termination.
 
 
 15
 Barrett filed the instant lawsuit in March 1997 alleging that Commissioners Lee and Colonna, the Commission and the County had violated his First Amendment and New York State constitutional rights by terminating his employment as Executive Director of the Commission "in retaliation for exercising his right to draw attention to matters of public concern." Specifically, Barrett asserted that he had been terminated in retaliation for his "alerting state investigators about the Rodriguez incident."
 
 
 16
 A jury trial was held in February 1998. At the close of the evidence Judge Casey delivered his instructions to the jury which, among other things, included the judge's sua sponte determination that the individual defendants were immune from liability under state law. Judge Casey then submitted to the jury a verdict form containing ten questions on liability issues. The first four related exclusively to the individual defendants. The verdict form then instructed the jurors that "[i]f your answer is 'No' to [questions one through four], your deliberations are concluded[.]"
 
 
 17
 During its deliberations, the jury sent a note to Judge Casey asking, "If we answer the first four questions, are we actually done; i.e. no answers needed to numbers five to ten?" Barrett's counsel then, for the first time, objected to the instruction on the verdict form because it made the liability of the municipal defendants entirely "dependent upon [a] finding against Lee and Colonna." Judge Casey disagreed and instructed the jury, "If your answer to Questions One through Four is in the negative . . . then, as the verdict sheet suggests, you need go no further." Returning to its deliberations, the jury quickly reached a verdict, answering "no" to the first four questions and, in accordance with the verdict form, not answering the questions on the liability of the municipal defendants.
 
 
 18
 Barrett moved for a new trial. The motion was denied and a final judgment was entered in favor of all the defendants.
 
 
 19
 This appeal followed.
 
 DISCUSSION
 
 20
 I. Evidentiary Rulings.
 
 
 21
 Barrett takes exception to several evidentiary rulings made by the district court. He alleges that the court's refusal to allow his counsel to question the defendants about the purpose of the Commission's March 1996 office guidelines prevented him from establishing that the defendants' proffered reasons for terminating him were pretextual. He further alleges that the district court improperly allowed hearsay into evidence, thereby substantially prejudicing his case. Both of these evidentiary challenges are meritless.
 
 
 22
 This Court reviews a district court's evidentiary rulings "only for manifest error" because "[t]he decision of which evidence is admissible is one that is committed to the district judge's discretion." Lowe v. Commack Union Free Sch. Dist., 886 F.2d 1364, 1376 (2d Cir. 1989).
 
 A. Testimony Regarding the March Guidelines
 
 23
 Barrett's 1983 and New York State constitutional claims are premised on his assertion that his employer took adverse actions against him in retaliation for his exercise of his First Amendment and New York State constitutional rights of free speech in connection with the Rodriguez dog-biting incident at the Orange County Jail. Barrett argues that to establish such a retaliation claim a plaintiff must show that his or her conduct was protected by the First Amendment and that the defendant's conduct was motivated by or substantially caused by the plaintiff's exercise of free speech. See Bernheim v. Litt, 79 F.3d 318, 324 (2d Cir. 1996). If a plaintiff meets this burden, Barrett asserts, the defendant can nonetheless avoid liability by showing that the adverse employment action would have been taken for legitimate reasons even in the absence of the defendant's allegedly improper motives. See Sagendorf-Teal v. County of Rensselaer, 100 F.3d 270, 274 (2d Cir. 1996). In order to prevail, Barrett says, he must therefore prove that the proffered neutral reason for the employment action was merely pretextual. See Howard v. Senkowski, 986 F.2d 24, 27 n.2 (2d Cir. 1993).
 
 
 24
 The district court erred, Barrett's argument continues, by preventing him from proving that the "neutral" reason offered by the Commission for his termination - that he violated the December guidelines - was a mere pretext. The court did so, he says, by preventing his lawyers from asking witnesses about the purpose of the March 1996 guidelines. Had they been able to do so, he says, he would have been able to show that the March guidelines were promulgated in response to a public disagreement between Barrett and former Commission Chair Poole regarding alleged human rights violations in the village of Kiryas Joel. According to Barrett, the March guidelines constituted an attempt by the Commission to retaliate against him for exercising his free-speech rights and the December guidelines were merely a continuation of this behavior. Barrett thus argues that testimony about the purpose of the March guidelines was essential to his pretext argument.
 
 
 25
 The district court was not persuaded by this line of reasoning and disallowed testimony regarding the March guidelines. The court found that Barrett's attempt to elicit testimony regarding his dispute with a former commissioner about a factually unrelated matter at least five months before the events that led to his termination was "an enormous stretch, probing to find a new approach to [his] lawsuit." The court was well within its discretion in so ruling.
 
 
 26
 Even assuming this evidence was relevant, it was properly excluded. Under Fed. R. Evid. 403, relevant "evidence may be excluded if its probative value is substantially outweighed... by considerations of... waste of time." Barrett's complaint and the trial it precipitated arose out of the Rodriguez dog-biting incident and the communications by Barrett regarding it. The court was not required to allow the trial to be diverted into an inquiry into an entirely different incident involving to a significant extent different people, places and events. The court's determination was neither arbitrary nor irrational, and was therefore well within the scope of its "broad discretion over the admission of evidence." Perry v. Ethan Allen, Inc., 115 F.3d 143, 150 (2d Cir. 1997); see also Raskin v. Wyatt Co., 125 F.3d 55, 65-66 (2d Cir. 1997) (similar).
 
 B. Hearsay Objections
 
 27
 Barrett's second evidentiary argument is that the district court allowed into evidence improper hearsay that prejudiced his case. He claims that the court erred, for example, when defendant Lee was allowed to testify that former commissioner Poole told Lee "that Barrett indicated he took direction from God himself," when Commissioner Chichester was permitted to testify that other commissioners told her that they had been unable to locate Barrett when they needed him, and when defendant Colonna was permitted to testify that another commissioner told her that they should not obtain Barrett's views on a Commission project because Barrett would probably just object to it.
 
 
 28
 The district court's rulings were correct. The issue was whether the testifying commissioners were motivated to terminate Barrett by his constitutionally protected speech, as Barrett claimed, or by his insubordination, as asserted by the defendants. The very fact that according to the commissioners these statements were made tends to establish that it was Barrett's behavior, not his speech, that animated the defendants. The witnesses' testimonial reports of the third parties' statements were thus not allowed for the purpose of establishing whether the third parties' comments indicating that Barrett was arrogant, difficult and obstructionist were true. They were admitted to assist the commissioners in seeking to demonstrate that they were motivated by Barrett's behavior and not by his comments on politically sensitive issues. They were therefore not hearsay. See Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial... , offered in evidence to prove the truth of the matter asserted." (emphasis added)).[1]
 
 
 29
 Even if the evidence had been improperly admitted, which it was not, its admission would have been harmless error and therefore not grounds for reversal. See Hynes v. Coughlin, 79 F.3d 285, 291 (2d Cir. 1996). We cannot conclude that the disputed testimony here substantially influenced the jury because almost all of it was repeated as undisputed testimony. For example, Barrett challenges the admission of Lee's statement that Poole, the former Chair of the Commission, told Lee that Barrett said he only took directions from God. But Lee also testified that Barrett told Lee directly, "Nobody can tell me what to do but God. I wouldn't take any instruction from [Poole]." The admission of Commissioner Chichester's testimony that several commissioners had told her that they were unable to locate Barrett during business hours was similarly harmless. Barrett's assistant Susan Varden and Commissioner Rivera gave undisputed testimony that Barrett was sometimes not in his office and could not be found. Even if the disputed testimony was hearsay, then, its admission was "harmless [because] we... conclude that [it] was unimportant in relation to everything else the jury considered on the issue [of motivation], as revealed in the record." Hynes v. Coughlin, 79 F.3d 291 (citations and internal quotation marks omitted).
 
 
 30
 Barrett's evidentiary arguments represent his only challenges to the verdict in favor of the individual defendants. Because we find these challenges to be meritless, we affirm the district court's judgment as to them.
 
 
 31
 The jury's finding that the individual defendants did not violate Barrett's constitutional rights renders moot both the question of whether the individual defendants were otherwise entitled to immunity under state law and the question of the state's liability for their alleged misbehavior under the doctrine of respondeat superior.
 
 
 32
 II. Municipal Defendants' Liability.
 
 
 33
 Barrett also argues that the district court erred in finding as a matter of law that the liability of the municipal defendants was contingent upon the liability of the individual defendants. As we have noted, the verdict form instructed the jury to cease deliberations if it found the individual defendants not liable, and the district court repeated this instruction orally over Barrett's objection after receiving a request from the jury for clarification.
 
 
 34
 As a preliminary matter, the defendants urge us not to consider Barrett's objection to the verdict form regardless of its potential merit. They argue that Barrett's lawyers forfeited any objections to the verdict form that were not made before the jury began deliberating. The defendants assert that the objection was not timely because Barrett's counsel objected only when the jury asked for clarifying instructions, and that the merits of the objection therefore should not be considered. We do not agree.
 
 
 35
 It is true that "failure to challenge the omission of an issue from a Rule 49(a) verdict form before the jury retires to deliberate constitutes a waiver of the right to a trial by jury on that issue." Bradway v. Gonzales, 26 F.3d 313, 317 (2d Cir. 1994). In this case, however, the alleged error was not the omission of an issue from the verdict form, which did contain questions as to the liability of the municipal defendants. Rather, Barrett's appeal focuses on the instruction provided on the verdict form, later repeated by Judge Casey, ordering the jurors not to reach the question of municipal liability if they found the individual defendants not liable. Because the subject of Barrett's complaint was an instruction, not the omission of a question, we treat his challenge as an objection to a jury instruction pursuant to Federal Rule of Civil Procedure 51.
 
 
 36
 An objection under Rule 51 usually must be made "before the jury retires to consider its verdict." Fed. R. Civ. P. 51. Barrett's counsel did not comply with this mandate. We nonetheless think the objection was timely because of counsel's objection at the time of Judge Casey's review of the jury's question, Judge Casey's ruling on Barrett's objection, and the judge's issuance of the clarifying instruction. "Objections to the instructions under Rule 51 [of the Federal Rules of Civil Procedure] made after the jury has begun deliberating . . . will not be considered on appeal.... If, however, the jury later is given additional instructions or the instructions are reread... an objection may be made at that time and it is the court's duty to correct the error." 9A CHARLES ALAN WRIGHT &AMP; ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 2553, at 415-17 (2d Ed. 1995). But cf. Parker v. City of Nashua, 76 F.3d 9, 13 (1st Cir. 1996) ("[F]ew cases address what happens when the jury is simply given the original instruction again and the lawyer. . . makes an objection . . . that was not properly presented before.").
 
 
 37
 The purpose of Rule 51's timeliness requirement is "to prevent unnecessary new trials because of errors the judge might have corrected if they had been brought to his attention at the proper time." Bonner v. Guccione, 178 F.3d 581, 586 (2d Cir. 1999) (citation and internal quotation marks omitted). In the present case, Judge Casey was provided with sufficient opportunity to correct the potential error before the jury was discharged. The jury instructions on the verdict form could have been modified after Barrett's counsel objected to them and before clarifying instructions were issued. We therefore do not think Rule 51 bars our consideration of an objection to a jury instruction that gave the trial judge an opportunity to correct that instruction, and we address the substance of Barrett's claim.
 
 
 38
 Barrett argues that under the Supreme Court's decision in Monell a municipality may be found liable for constitutional violations under 42 U.S.C. 1983 even if no named individual defendants are found to be liable. He asserts that it was therefore error for the district court to remove the question of municipal liability from the jury once the jury determined that Lee and Colonna were not liable. We agree.
 
 
 39
 Other circuits have recognized that a municipality may be found liable under 1983 even in the absence of individual liability. See Anderson v. City of Atlanta, 778 F.2d 678, 686 (11th Cir. 1985) ("Monell... and its progeny do not require that a jury must first find an individual defendant liable before imposing liability on local government"); Garcia v. Salt Lake County, 768 F.2d 303, 310 (10th Cir. 1985)("Monell does not require that a jury find an individual defendant liable before it can find a local governmental body liable."). These courts conclude that even in situations where the acts or omissions of individual employees do not violate an individual's constitutional rights, "the combined acts or omissions of several employees acting under a governmental policy or custom may violate" those rights. Id. Thus in Garcia, for example, the Tenth Circuit rejected the argument that a jury's finding that ten county employees were not liable for a plaintiff's death was irreconcilable with its finding that the county itself was liable. See id.
 
 
 40
 We agree with our sister circuits that under Monell municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants. Cf. City of Los Angeles v. Heller, 475 U.S. 796, 798-99 (1986) (per curiam) (where alleged constitutional injury is caused solely by named individual defendant who is found not liable, municipal liability cannot lie). It is therefore possible that a jury could find the Commission and the County of Orange liable for the alleged violations of Barrett's First Amendment rights even after finding that Lee and Colonna are not liable. Lee and Colonna may have been the most prominent figures in Barrett's termination; they may have issued plaintiff's termination letter. But the Commission is a multi-member body that makes its determinations as a group, and many of the adverse employment actions complained of by Barrett, including the decision to terminate him as Executive Director of the Commission, were taken by the Commission as a whole, not by Lee and Colonna by themselves. It is therefore possible that the defendant commissioners did not as individuals violate Barrett's rights, but that the Commission did. Cf. Jeffries v. Harleston, 52 F.3d 9, 14 (2d Cir. 1995) (where fourteen members of Board of Trustees voted to terminate plaintiff, and only six acted with discriminatory motive, no constitutional violation because majority of Board acted with permissible motive).
 
 
 41
 For these reasons we conclude that it was error for the district court to prevent the jury from deciding the issue of municipal liability simply because Lee and Colonna were found not to be liable. We vacate the district court's judgment as it relates to Barrett's claims against the municipal defendants and remand the case to the district court for retrial on those claims.
 
 CONCLUSION
 
 42
 We affirm the district court's judgment, based on the jury verdict, as to the individual defendants. We vacate its judgment with respect to Barrett's claims against the municipal defendants and remand to the district court for retrial as to them.
 
 
 43
 Barrett shall bear the individual defendants' costs on appeal. The municipal defendants shall bear one-half of Barrett's costs on appeal.
 
 
 
 Notes:
 
 
 *
 Hon. Milton I. Shadur, of the United States District Court for the Northern District of Illinois, sitting by designation.
 
 
 [1]
 At oral argument, Barrett argued that Judge Casey should have delivered a limiting instruction regarding this disputed testimony in order to make clear the purpose for which it was being admitted. No limiting instruction was requested at trial, however, and the court was not bound to issue such an instruction sua sponte. See Gray v. Busch Entertainment Corp., 886 F.2d 14, 16 (2d Cir. 1989) ("The failure to request a limiting instruction . . . waived any claim short of outright inadmissibility."); Lieberman v. Gulf Oil Corp., 331 F.2d 160, 164 (2d Cir. 1964) (burden to request limiting instruction rests with party seeking such instruction); Case v. New York Central Railroad Co., 329 F.2d 936, 938 (2d Cir. 1964)(same).