641 F.2d 729
 David LITTLEFIELD, as next friend for the protection of the
interests of James Ed Langley, Plaintiff-Appellee,
v.
Gary DELAND, individually and in his capacity as supervisor
of the Salt Lake City County Jail, Defendant,
and
Salt Lake County, a municipal corporation,
Defendant-Appellant.*
 No. 80-1751.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted March 18, 1981.
Decided May 12, 1981.
 
 Patricia J. Marlowe, Deputy County Atty., Salt Lake City, Utah (Ted Cannon, Salt Lake County Atty., Salt Lake City, Utah, with her on the briefs), for defendants-appellants.
 John B. Maycock, Salt Lake City, Utah (Brian M. Barnard and Kerry Eagan, Salt Lake City, Utah, with him on the brief), for plaintiff-appellee.
 Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 Plaintiff, a young man suffering from mental illness, was arrested and charged with disorderly conduct based on certain bizarre but nonviolent activities in a service station. He was placed in a "strip cell" a solitary cell long used by the county to punish disorderly pretrial detainees and to segregate prisoners with severe mental disorders. For a period of nearly two months (fifty-six days) he was held there without notice or opportunity to be heard with respect to the nature or duration of his confinement. The "strip cells" in which plaintiff was held for a substantial part of this period have no windows, no interior lights, no bunk, no floor covering, and no toilet except for a hole in the concrete floor which was flushed irregularly from outside the cell. During most of his fifty-six days of confinement, plaintiff was deprived of all his clothes and was given no bedding whatsoever. He slept naked on the concrete floor. Moreover, he was given no opportunity to engage in any recreation outside his cell during this long period and was not permitted to have any reading or writing materials. Thus, to amuse himself this mentally ill prisoner was relegated to banter with inmates in nearby cells. Some of these exchanges escalated into the throwing back and forth of urine and feces. Because plaintiff was denied articles of personal hygiene, he had no means of washing his hands after these unsanitary exchanges, and yet was required to eat most of his food with his fingers. Plaintiff's cell frequently stank of feces and urine.
 
 
 2
 Plaintiff's court-appointed attorney did nothing of substance to help plaintiff obtain relief from these conditions;[1] on the initiative of a "next friend," however, plaintiff finally obtained an attorney who apparently recognized that plaintiff could not be held indefinitely under such conditions absent any procedural safeguards. This attorney filed a state court action which was followed immediately by plaintiff's release from the "strip cell" and his transfer to the state mental hospital, where his illness which not surprisingly had been exacerbated by his long and oppressive confinement was brought under control. In due course, plaintiff filed an action pursuant to 42 U.S.C. § 1983 against Salt Lake County and various county officials. After an extended bench trial, the court awarded compensatory damages, court costs, and attorney's fees and reasonable expenses against the corporate County. The County then filed this appeal.
 
 
 3
 Plaintiff's theories are, alternatively, that this kind and length of confinement without hearing deprived him of due process of law and that it subjected him to cruel and unusual punishment. The trial court found that
 
 
 4
 Salt Lake County deprived plaintiff of due process of law by confining him in such a strip cell for more than 56 days without notice, hearing or meaningful opportunity for reevaluation or review of his condition, or the necessity of his confinement under the conditions in which he was confined, in violation of his rights under the Fourteenth Amendment to the Constitution of the United States.
 
 
 5
 Memorandum Decision, at 16.
 
 
 6
 We affirm the judgment of the district court that plaintiff's confinement amounted to punishment and therefore that the county's failure to provide plaintiff with any meaningful notice and hearing violated the due process clause of the fourteenth amendment. As the Supreme Court in Bell v. Wolfish, 441 U.S. 520, 534, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979), explained, "what is at issue when an aspect of pretrial detention that is not alleged to violate any express guarantee of the Constitution is challenged, is the detainee's right to be free from punishment." Thus, the constitutionality under a due process analysis of the nature or duration of pretrial detention turns on whether such detention amounts to "punishment" in the constitutional sense. "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Id. at 535, 99 S.Ct. at 1872.
 
 
 7
 In determining whether the disabilities imposed on plaintiff during his detention constituted punitive measures implicating due process or, conversely, were permissible regulatory restraints, the trier of fact must first consider whether detention facility officials expressed an intent to punish the pretrial detainee. If they did not, the "determination generally will turn on 'whether an alternative purpose to which (the restriction) may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned (to it).' " Id. at 538, 99 S.Ct. at 1873 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 567-568, 9 L.Ed.2d 644 (1963)). This standard obviously does not permit a court to impose on prison administrators its idea of how best to operate a detention facility. On the other hand, the court must apply the Bell standard to the facts underlying a § 1983 claim based on an allegedly unconstitutional policy of pretrial detention to determine whether that policy in fact constitutes punishment whatever its asserted purposes may be.
 
 
 8
 Here, the district court found no clear evidence of an expressed intent by facility officials to punish plaintiff. The court did find, however, that "the condition and manner in which he was maintained could hardly have been any worse than if he were being punished for adjudicated infractions of a serious nature." Memorandum Decision, at 9. The court also concluded that the extreme deprivations to which plaintiff was subjected during his fifty-six days of confinement were "partly retributive, partly precautionary", id. at 2, but, in any event, were "unreasonably degrading and inhumane" a mere "masquerade as essential custodial detention," id. at 3, and therefore clearly "excessive in relation to the alternative purpose (of essential custodial detention) assigned (to it)," Bell v. Wolfish, 441 U.S. at 538, 99 S.Ct. at 1873, in manifest violation of plaintiff's rights of due process as a pretrial detainee.
 
 
 9
 In finding the trial court's judgment abundantly supported by the record, we do not hold that the use of any kind of "strip cell" is per se unconstitutional. We hold only that to hold a pretrial detainee under conditions of detention this extreme for such an excessive period as fifty-six days is punishment and, absent a determination of guilt,[2] cannot be imposed in accordance with the due process clause of the fourteenth amendment. See Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); Wright v. Enomoto, 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978), aff'g 462 F.Supp. 397 (N.D.Cal.1976); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
 
 
 10
 We must next determine who is to bear the responsibility for this violation of plaintiff's constitutional rights. In Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court concluded, "(I)t is when execution of a (local) government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the (local) government as an entity is responsible under § 1983." Id. at 694, 98 S.Ct. at 2037. The Court further stated that "local governments may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91, 98 S.Ct. at 2036. Under these standards and in view of the record before us, we find that substantial evidence supports the finding of the district court that the County's policy or custom proximately caused plaintiff's constitutional deprivations.
 
 
 11
 The district court made several findings with respect to this issue. It found that the "nature and extent of jail facilities during all times material herein (were) under the control of the Board of County Commissioners of Salt Lake County," Memorandum Decision, at 5; that plaintiff was held in the strip cell under the conditions described above "pursuant to Salt Lake County's long-standing custom and policy of administrative segregation," id. at 9; and that, since there had been other detentions comparable in duration to plaintiff's, see id. at 10, and since the County had failed to implement any "effective procedure to assure that mentally-ill inmates are not kept in such facilities for unreasonable periods of time," id., plaintiff's constitutional deprivation resulted proximately from a custom or policy of the County, see id. at 14-15. Moreover, the court found that the Commissioners "over a long period of time had their attention repeatedly called to the inadequacy of these facilities in relation to the problems of mentally-ill patients ( constituting at least 15% of the total jail population ) who had to be held in custody in the jail awaiting trial or other dispositions," but that the County "pursued a policy of indifference to (these) problems." Id. at 12. These are not findings of vicarious liability but of direct culpability on the part of the County based upon the failure of its Commissioners adequately to fund or to oversee the general policies of the county jail. They are not clearly erroneous.
 
 
 12
 Finally, we find no reversible error in the trial court's award of attorney's fees. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides that in certain types of civil rights proceedings, including a § 1983 proceeding like the case now before us, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." In Francia v. White, 594 F.2d 778, 782 (10th Cir. 1979), we stated that the fee-award criteria of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), could assist the trial court in arriving at a fair and reasonable judgment, but that, contrary to the County's arguments, all of those criteria did not have to be considered for the court to make a reasonable award. Accord, Battle v. Anderson, 614 F.2d 251, 258 (10th Cir. 1980). In Gurule v. Wilson, 635 F.2d 782, 793 (10th Cir. 1980), we noted that the clear intent of Congress in § 1988 was that the trial court award attorney's fees sufficient to attract and fully to compensate competent counsel. We stated further that attorney's fees should not be awarded for the pursuit of any frivolous issues or issues asserted in bad faith, but that they may be awarded for work upon issues of fact or law upon which plaintiff ultimately did not prevail so long as they were reasonably calculated to promote the client's interest. See id. at 793-94. Finally, we ruled that in making its award, "the court should articulate its reasoning to demonstrate how it reached its conclusion." Id. at 794. The trial court followed these guidelines, and we can find no grounds for concluding that in applying them the court abused its discretion.
 
 
 13
 Plaintiff is also entitled to fair and reasonable attorney's fees for work done on this appeal and in resolving the fee issue itself. Love v. Mayor, City of Cheyenne, 620 F.2d 235, 237 (10th Cir. 1980). Accord, Gurule v. Wilson, 635 F.2d at 792. The trial court, however, did not state that it had considered an award of fees for the resolution of the fee issue itself. Accordingly, we remand this cause with a directive to the trial court to award reasonable attorney's fees for work done on this appeal and to consider whether any additional attorney's fees are appropriate for work done in resolving the fee issue itself.
 
 
 14
 AFFIRMED AND REMANDED.
 
 
 
 [1]
 This failure of the court-appointed attorney to demand a hearing on behalf of plaintiff or to make some other effective challenge to the extreme conditions or length of plaintiff's confinement does not alter our analysis. The County has made no supportable suggestion that plaintiff waived his right to any of these remedies. Although the County did file a third-party complaint against the attorney, the court dismissed this third-party action, and the County has not appealed that dismissal
 
 
 [2]
 A determination of guilt in this case would not have altered our decision. The district court found that plaintiff's confinement subjected him to cruel and unusual punishment in violation of the eighth and fourteenth amendments. While we find that the eighth amendment standards for determining whether government action amounts to cruel and unusual punishment are not directly applicable until after guilt has been determined, see Bell v. Wolfish, 441 U.S. at 535 n.16, 99 S.Ct. at 1872 n.16, an analysis of this state action under those standards makes clear that, however imposed, plaintiff was unconstitutionally punished and is entitled to relief