**F I L E D**
United States Court of Appeals
Tenth Circuit

JUL 23 1997

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DEBORAH BARRIE, Personal
Representative of the Estate of Alan
Charles Ricks, deceased; ALICE RICKS,
the Natural Mother and heir of Alan
Charles Ricks; and CHEILIEGH RICKS,
the minor child and heir of Alan Charles
Ricks, by and through her Guardian Ad
Litem, Becky Freeman,

     Plaintiffs-Appellants,

v.

GRAND COUNTY, UTAH, a political
subdivision of the State of Utah; JAMES
D. NYLAND, Sheriff of Grand County,
Utah; ARCHIE WALKER, Deputy
Sheriff, Grand County, Utah; KIM NEAL,
Deputy Sheriff, Grand County, Utah;
DAVID KNUTSON, Grand County
Commissioner; MANUEL TORRES,
Grand County Commissioner; and SAM
CUNNINGHAM, Grand County
Commissioner,

    Defendants-Appellees.

No. 96-4027

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 93-CV-936)

---

Submitted on the briefs*

Michael P. Zaccheo and Christian W. Nelson, Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for Plaintiffs-Appellants.

Dale J. Lambert and Karra J. Porter, Christensen & Jensen, Salt Lake City, Utah, for Defendants-Appellees.

———————————

Before **PAUL J. KELLY, JR.**, Circuit Judge, **MARY BECK BRISCOE,** Circuit Judge**,** and **ROBERT H. McWILLIAMS**, Senior Circuit Judge.

———————————

**McWILLIAMS**, Senior Circuit Judge.

———————————

On October 27, 1991, Alan Charles Ricks committed suicide in the county jail in Grand County, Utah. On October 19, 1993, Deborah Barrie, sister of Alan Ricks and the personal representative of Ricks' estate; Alice Ricks, the mother and heir of Ricks; and Cheiliegh Ricks, the minor child and heir of Ricks, filed a civil rights action in the United States District Court for the District of Utah. Jurisdiction was based on 42 U.S.C. §§ 1983 and 1988. Named as defendants were the following: Grand County, Utah, a political subdivision of the State of Utah; James D. Nyland, the sheriff of Grand County; Archie Walker and Kim Neal, deputy sheriffs for Grand County; and Grand County Commissioners David Knutson, Manuel Torres and Sam Cunningham.

———————————

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause therefore was ordered submitted without oral argument.

In their complaint, the plaintiffs, under the heading "General Factual Allegations," alleged as follows: (1) Ricks was arrested in Grand County, Utah, without warrant by deputies of the Grand County Sheriff's office on October 26, 1991, at about 6:00 p.m. and was taken to the Grand County jail, arriving there about 7:00 p.m. on October 26, 1991; (2) after being booked, Ricks was placed in the jail's "drunk tank" at about 7:30 p.m., deputy Walker noting, *inter alia,* that Ricks had been drinking alcohol; (3) deputy Walker permitted Ricks to retain possession of the clothes he was wearing at the time of his arrest, which included a pair of sweat pants containing a 38-inch long cloth cord to cinch the waist of the sweat pants; (4) a jail cell check of Ricks was made around 11:15 p.m., without incident, and, thereafter, about 1:00 a.m. on October 27, 1991, deputy Neal, while making a routine jail check, observed Ricks in his cell and moving about, though Walker did not speak to Ricks at that time; and (5) at about 2:00 a.m. on October 27, 1991, deputy Neal, when he was unable to see Ricks in the isolation cell, entered the cell and found Ricks hanging from the 38-inch sweat pants draw cord, which had been fashioned into a noose, looped around Ricks' neck and tied to the bars of the cell, and Ricks was dead.

The first cause of action set forth in the complaint concerned the claim of Deborah Barrie, as personal representative of Ricks' estate. In that claim Barrie alleged, *inter alia,* that deputy sheriffs Walker and Neal confined Ricks to "unreasonable conditions of confinement," which violated the Fourth Amendment to the United States Constitution.

Barrie then went on to allege that the Grand County Commissioners and Sheriff Nyland also acted "unreasonably" in violation of Ricks' right to be free from unreasonable seizures as secured by the Fourth Amendment, by, for example, failing to have constructed a modern jail facility, failing to adequately train and supervise jail personnel, and the like.

The second, and remaining claim in the complaint, combined the claims of Alice Ricks, Ricks' mother, and Cheiliegh Ricks, Ricks' minor child. They realleged the allegations above summarized. They then asserted that they had a "liberty interest" under the Fifth and Fourteenth Amendments "in the continued care, comfort and society of their son and father respectively," which interest had been violated by the gross negligence and callous indifference of the defendants. Each of the three plaintiffs sought $1,000,000 as damages.

After considerable discovery by all parties, the defendants filed a motion for summary judgment.[1] A hearing on the motion for summary judgment was held December 20, 1995. At that hearing, defense counsel's basic position was that the duty owed by the defendants to Ricks, a pre-trial detainee, was not to be "deliberately indifferent" to Ricks' safety, and that the background facts, as fully developed by discovery, did not show that the conduct of the defendants rose to the level of "deliberate indifference." Counsel for

---

[1]The motion, or motions, for summary judgment are not, so far as we can tell, in the record before us. However, a transcript of the hearing on the motions for summary judgment is in appellants' appendix.

the plaintiffs argument was, and is, that, although the "deliberate indifference" standard is applicable to a pre-trial detainee who has been brought before a magistrate judge to determine whether there was probable cause for a warrantless arrest, that, where the pretrial detainee has <u>not</u> been brought before a magistrate judge to determine whether there was probable cause for his warrantless arrest, and the arrestee commits suicide, the jailor's conduct is to be judged on an "objective reasonableness" standard, which is not as strict as the "deliberate indifference" standard.

At the conclusion of the hearing, the district court, with brief comment, held that the defendants' conduct was to be tested by the "deliberate indifference" standard and that the facts, as established by the several depositions, did not make out a case of "deliberate indifference." In line with that holding, the district court also concluded that as of the date of Ricks' suicide there was "no clearly established law that deliberate indifference didn't apply, and that only objective reasonableness applied to denial of medical care cases in this situation." Accordingly, the district court then concluded that qualified immunity and legislative immunity applied. On January 3, 1996, the district court, in line with its comment made at the conclusion of the hearing held on December 20, 1995, granted the motion for summary judgment and dismissed the plaintiffs' complaint with prejudice. Plaintiffs appeal. We affirm.

The first issue to be decided is the duty owed by the defendants to Ricks. As stated, the defendants' position is that they are not liable to the plaintiffs unless they were

"deliberately indifferent" to Ricks' conditions of confinement, which conditions posed a substantial risk of serious harm to Ricks. Plaintiffs' position is that the defendants owed Ricks the duty of exercising "objective reasonableness" to ensure that Ricks was not exposed to a substantial risk of serious harm while in their custody. However, before considering that matter, we perhaps should first examine Ricks' status at the time of his suicide.

The record before us discloses that on October 26, 1991, at approximately 5:26 p.m., Grand County Deputy Sheriff Curt Brewer was dispatched to the scene of an attempted automobile burglary. The citizen-complainant had seen Ricks carrying a purse belonging to his wife. The citizen-complainant, and others, had apprehended Ricks and then called the police. Brewer arrived on the scene at about 5:41 p.m. and backup officers arrived shortly thereafter. Brewer requested the dispatcher to contact detective John McGann and advise him of the situation. In turn, Detective McGann advised Brewer to have an officer drive Ricks to the sheriff's office where Detective McGann would meet the officers. Ricks was arrested at the scene and handcuffed. After the officers had taken photographs of Ricks' vehicle and some of its contents, an officer drove Ricks' vehicle to the sheriff's office. Brewer then advised the dispatcher that he was finished at the location and that he was transporting a male prisoner to the sheriff's office.

Ricks had been cooperative and had given Brewer information concerning his name, address, phone number, next of kin and Social Security number. At about 7:00 p.m. on October 26, after completing his arrest report, Brewer turned Ricks over to deputy sheriff Walker for booking. Walker did detect an odor of alcohol on Ricks. Also, when questioned, *inter alia,* about whether he had tried to hurt himself in the past, attempt suicide, or was contemplating suicide, Ricks shook his head and answered "no." As Walker finished filling out his initial log, detective McGann took Ricks to his office for questioning. McGann explained to Ricks that he was investigating several recent auto burglaries, and that, before asking Ricks any questions, he was going to read Ricks his rights. When advised of his right to a lawyer, Ricks stated he had better talk to a lawyer before answering any questions. Such terminated the interview and Ricks was returned to the custody of Walker. After the booking was completed, Ricks' shoes, hat and glasses were taken from him and he was placed in the jail's "drunk tank."

At about 11:00 p.m. on October 26, 1991, deputy Kim Neal came on duty, relieving Walker. After Walker briefed Neal on what was going on in the jail, and that he had a prisoner in the tank on vehicle burglary, Neal did a jail check and found Ricks in his cell. In response to Neal's question as to how he was doing, Ricks said "alright" and appeared "fine" to Neal. At about 1:00 a.m. on October 27, 1991, Neal made another jail check and noted Ricks "moving around" in his cell. Neal did not speak to Ricks at this time. Around 2:00 a.m. on October 27, 1991, Neal made another jail check. On this

occasion Neal could not see Ricks, so he opened the cell door and entered the cell.  He discovered Ricks in the northeast corner of his cell, sitting on the floor.  Ricks had tied one end of his waist string to a bar on an old unused access door and the other end around his neck.  Ricks was dead.

Plaintiffs' position is that, if Ricks had been brought before a magistrate judge, who, presumedly, then found that there was probable cause for Ricks' arrest, and Ricks was thereafter confined in jail and later committed suicide prior to trial, the proper standard would be one of  "deliberate indifference" to a known risk.  *Estate of Hocker v. Walsh*, 22 F.3d 995 (10th Cir. 1994).  However, counsel argues that the fact that Ricks committed suicide <u>before</u> he was taken to a magistrate judge, dictates a different standard, namely, the "objective reasonableness" standard, which is a lesser standard than "deliberate indifference."  In thus arguing, counsel relies on *Austin v. Hamilton,* 945 F.2d 1155 (10th Cir. 1991) and *Jones v. County of DuPage,* 700 F.Supp. 965 (N.D. Ill., 1988).

In *Austin*, the plaintiffs were stopped at a port of entry into the United States from Mexico by officers, who, after finding a small amount of marijuana in their vehicle, allegedly took them to the port of entry office, handcuffed them and repeatedly assaulted them, later releasing them without charging either with any offense.  The defendants' account of things was that they acted reasonably in their handling of two unruly and abusive detainees.  The district court denied defendants' motion for summary judgment, holding that the defendants were not entitled to the defense of qualified immunity since

there was a genuine dispute as to just what happened. On appeal, we affirmed. In so doing, we stated that the Fourth Amendment not only bars the use of excessive force during the making of an arrest, but such also bars the use of excessive force during a period of detention immediately following arrest and before the person is taken before a magistrate judge, or other judicial official, to determine whether the arrest and continued detention were based on probable cause. So, in *Austin* we were concerned with the intentional infliction, according to the plaintiffs, of excessive force during detention after arrest. In this regard, we spoke as follows:

> We conclude that just as the fourth amendment's strictures continue in effect to set the applicable constitutional limitations regarding both duration (reasonable period under the circumstances of arrest) and legal justification (judicial determination of probable cause), <u>its protections also persist to impose restrictions on the treatment of the arrestee detained without a warrant</u>. *Accord Henson,* 717 F.Supp. at 1335-36. *Cf. Powell,* 891 F.2d at 1044 ("We think the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested [pursuant to a warrant] is arraigned or formally charged, and remains in the custody (joint or sole) of the arresting officers.") (Emphasis added.)

*Austin,* 945 F.2d at 1160.

From the foregoing quote, counsel argues that <u>any</u> claim for mistreatment by police, or jailors, occurring while one is being detained after a warrantless arrest and before he is taken before a magistrate judge, is to be judged on a standard of "objective reasonableness," including a claim based on alleged failure to prevent a detainee from

committing suicide. We disagree. *Austin* did not involve a claim based on jail suicide. It was based on alleged intentional physical assaults by police, occurring while a person, who was arrested without warrant, was being detained and before presentment to a magistrate judge. Ours is a jail suicide case and distinguishable from *Austin.*

*Jones v. County of DuPage, supra,* arguably supports plaintiffs' position. In that case a district court held that an individual arrested without warrant remains an arrestee until brought before a judicial officer for probable cause determination, and that the Fourth Amendment reasonableness clause applies to <u>all</u> claims, including one based on jail suicide arising from the alleged failure of government officials to provide reasonable conditions of confinement. We are not persuaded by the reasoning of the district court, and, more importantly, such is not consistent with prior decisions of this court.

At the outset, we note that claims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody. In *Popham v. City of Talladega,* 908 F.2d 1561 (11th Cir. 1990), a jail suicide case, the Eleventh Circuit upheld a district court's grant of summary judgment for the jail officials based, in part, on the failure of the plaintiff to demonstrate that the defendants showed "'deliberate indifference' to the needs of the prisoner" and were, therefore, entitled to qualified immunity. In so doing, the Eleventh Circuit spoke as follows:

> The deliberate indifference standard arose in the context of a medical case, in which a prisoner claimed inadequate medical treatment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, (1976). <u>Because jail</u>

> suicides are analogous to the failure to provide medical care, deliberate indifference has become the barometer by which suicide cases involving convicted prisoners as well as pretrial detainees are tested. *See Anderson v. City of Atlanta,* 778 F.2d 678, 686-87 (11th Cir. 1985) (pretrial detainee's constitutional rights are denied by deliberate indifference to his serious medical needs just as deliberate indifference denies the rights of a convicted prisoner). (Emphasis added.)[2]

*Popham,* 908 F.2d at 1563.

In *Frohmader v. Wayne,* 958 F.2d 1024 (10th Cir. 1992), decided subsequent to *Austin,* we affirmed the district court's grant of summary judgment on plaintiff's claim based on inadequate medical attention by jail officials.[3] In that case we spoke as follows:

> [5] Under the Fourteenth Amendment's due process clause, pretrial detainees, like Frohmader, are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment. *Martin,* 909 F.2d at 406. Thus, Frohmader's inadequate medical attention claim must be judged against the "deliberate indifference to serious medical needs" test of *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). *Martin,* 909 F.2d at 406. Frohmader contends that Wayne's response to his complaints of claustrophobia and agoraphobia constituted a violation of the Estelle standard.

*Frohmader*, 958 at 1028.

---

[2]*See also Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir. 1994) and *Buffington v. Baltimore County,* 913 F.2d 113, 120 (4th Cir. 1990), *cert. denied,* 499 U.S. 906 (1991).

[3]*Frohmader* was not a jail suicide case. Officers were attempting to serve a summons and complaint on the defendant when a confrontation escalated. The defendant was then arrested, but, so far as we can tell, he was not later taken before a magistrate judge to determine the legality of the arrest.

- 11 -

As indicated, in *Frohmader* we affirmed the district court's grant of summary judgment for the defendants on plaintiff's claim of inadequate medical treatment because plaintiff had failed to make a sufficient showing that the defendants' conduct amounted to "deliberate indifference."

In *Howard v. Dickerson*, 34 F.3d 978, 980 (10th Cir. 1994), we upheld a district court's order denying the defendant's motion to dismiss a claim based on a charge of "deliberate indifference to known medical needs" of the plaintiff.[4] In that case, we spoke as follows:

> The constitutional protection against deliberate indifference to a prisoner's serious medical needs, as announced in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth Amendment shields prisoners after adjudication), applies to pretrial detainees through the due process clause of the Fourteenth Amendment. *Garcia v. Salt Lake County,* 768 F.2d 303, 307 (10th Cir. 1985). In *Martin v. Board of County Commissioners of County of Pueblo,* 909 F.2d 402 (10th Cir. 1990), officers asserted a qualified immunity defense to an alleged violation of this standard. The officers went to plaintiff's hospital room on the day of her release to execute an arrest warrant for failure to appear on a speeding violation. Plaintiff and her mother, a doctor, explained plaintiff suffered from a fractured neck, and movement, except by wheelchair or gurney, presented a risk of grave injury. Despite the warning, the officers walked plaintiff to a police van and transported her to the county jail. The *Martin* court upheld the denial of qualified immunity because *Garcia* clearly established pretrial detainees share the same protection from deliberate indifference

---

[4]*Howard* was not a jail suicide case. However, there was a warrantless arrest, and, as far as we can tell, the arrestee never did appear before a magistrate judge to determine the legality of his arrest.

to serious medical needs as convicted inmates. *Martin,* 909 F.2d at 406.

*Howard,* 34 F.3d at 980.

In *Wilson v. Meeks,* 52 F.3d 1547 (10th Cir. 1995) we reversed a district court which had denied the defendants' motion for summary judgment on plaintiffs' claim based on defendants' alleged failure to render medical aid to the deceased, who had been shot by an officer and who shortly later died as a result thereof. The deceased had been shot and seriously wounded by police, and plaintiffs' claim was, *inter alia,* that the police had failed to render emergency medical treatment at the scene of the shooting, resulting in death shortly thereafter.[5] In *Wilson*, we spoke as follows:

> The primary case employing the Eighth Amendment standard of care is *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). It held "deliberate indifference" to the medical needs of prisoners a violation of the Eighth Amendment ban on cruel and unusual punishment. *Id.* at 104, 97 S.Ct. at 291. The duty to provide access to medical care extends to pretrial detainees as well. *Massachusetts Gen. Hosp.,* 463 U.S. at 244, 103 S.Ct. at 2983.
>
> The two lines of analysis come together in *Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994). *Howard* applied the Eighth Amendment standard of deliberate indifference to the Due Process rights of pretrial detainees. Eighth Amendment jurisprudence is not always applied to pretrial detainees. *Littlefield v. Deland,* 641 F.2d 729 (10th Cir. 1981). *Howard* relaxed the line of demarcation, applying the deliberate indifference standard of *Estelle* to a pretrial detainee via the Due

---

[5]From our reading of *Wilson,* we believe it to be rather obvious that the deceased had never been brought before a magistrate judge to determine the legality of his warrantless arrest.

Process protections of the Fourteenth Amendment. *Howard*, 34 F.3d at 980-81. *Howard* also held the legal standard of deliberate indifference was clearly established for the purposes of section 1983. *Id.* at 981; *see also Garcia v. Salt Lake County,* 768 F.2d 303, 307 (10th Cir. 1985) (Fourteenth Amendment claim for man who died in custody based on failure to provide adequate medical observation); *Martin v. County Comm'rs of County of Pueblo,* 909 F.2d 402 (10th Cir. 1990) (Fourteenth Amendment claim for arrest of plaintiff in her hospital room).

*Wilson,* 52 F.3d at 1555.

*Estate of Hocker v. Walsh,* 22 F.3d 995, (10th Cir. 1994) involved a claim under 42 U.S.C. § 1983 brought against the Board of County Commissioners of Cleveland County (Oklahoma) and the Sheriff of that county by a father whose daughter had committed suicide in the Cleveland County Detention Center by hanging herself from an upper bunk using a towel. The daughter had been arrested without warrant on charges of trespass, public intoxication and possession of controlled dangerous substances. She was "booked" and placed in the Detention Center. On the day following her arrest, the daughter made an initial appearance on criminal charges before a district judge in Cleveland County and a municipal judge in Norman, Oklahoma. However, our opinion in *Estate of Hocker* does not indicate that she was ever taken before a magistrate judge or other judicial official to determine the legality of her arrest and continued detention. It was later on that same day that she committed suicide. The father in *Estate of Hocker* apparently agreed that, in order for him to prevail, he had to show that the county and the sheriff were "deliberately indifferent" to the serious medical needs of his daughter, and his position in that regard was that he had

made a sufficient showing of "deliberate indifference" to defeat the defendants' motion for summary judgment. The district court granted summary judgment, and, on appeal, we affirmed. In so doing, we spoke as follows:

> B. Deliberate Indifference to Serious Medical Needs
>
> Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment. *Frohmader v. Wayne,* 958 F.2d 1024, 1028 (10th Cir. 1992). Thus, plaintiff's claim for inadequate medical attention must be judged against the "deliberate indifference to serious medical needs" test of *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). *Martin v. Board of County Comm'rs,* 909 F.2d 402, 406 (10th Cir. 1990). Relying on *Garcia v. Salt Lake County,* 768 F.2d 303 (10th Cir. 1985), plaintiff contends that Sheriff Walsh and Cleveland County were deliberately indifferent to the serious medical needs of Ms. Hocker.

*Estate of Hocker,* 22 F.3d at 998.

On the basis of the foregoing cases, we conclude that in this circuit a prisoner, whether he be an inmate in a penal institution after conviction or a pre-trial detainee in a county jail, does not have a claim against his custodian for failure to provide adequate medical attention unless the custodian knows of the risk involved, and is "deliberately indifferent" thereto. Whether the detainee has been taken before a magistrate judge or other judicial officer to determine the legality of his arrest is not material, the custodian's duty is the same in either event. And the same standard applies to a claim based on jail suicide, i.e., the custodian must be "deliberately indifferent" to a substantial risk of suicide. In this regard,

we should note that in the instant case, the legality of Ricks' arrest, or his detention, has never been challenged, as such, on appeal.

The next issue is just what constitutes "deliberate indifference." In *Estelle v. Gamble,* 429 U.S. 97, 104 (1976), the Supreme Court spoke of "deliberate indifference" as follows:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia, supra,* at 182-183, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

In *Berry v. City of Muskogee,* 900 F.2d 1489, 1495-96 (10th Cir. 1990), we discussed the meaning of "deliberate indifference" as follows:

> Courts have struggled to give a practical meaning to the "deliberate indifference" standard. In *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986), the court held that negligence, gross negligence and tort recklessness were all insufficient to justify liability under the Eighth Amendment. With all due respect to that court's analysis, we reject its conclusion that anything less than criminal recklessness by a jailer is per se insufficient to give rise to Eighth Amendment protections. As we see it, in its analysis, the *Duckworth* court collapsed the distinction so carefully preserved in *Whitley* between the malicious and sadistic standard applicable in prison riot situations and the deliberate indifference standard applicable to more ordinary prison policy decisions. *Whitley,* 475 U.S. at 320, 106 S.Ct. at 1084. "Deliberate indifference," while requiring a higher degree of fault than negligence, or even gross

- 16 -

negligence, *City of Canton v. Harris,* 489 U.S. 378, ---- & n. 7, 109 S.Ct. 1197, 1204 & n. 7, 103 L.Ed.2d 412 (1989), remains lower than the intentional and malicious infliction of injury reflected in the *Whitley* standard. We, therefore, hold that an official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights.

Our study of the record before us leads us to conclude that plaintiffs' showing of "deliberate indifference" on the part of any of the defendants was insufficient to withstand defendants' motion for summary judgment. The defendants' conduct, viewed individually or collectively, simply does not rise to the level of "deliberate indifference" to a known or obvious risk, which, in our case, is a substantial risk of suicide.

As concerns the district court's alternative ruling that the defendants were entitled to qualified immunity, plaintiffs argue in this court that the "standard announced by the United States Court of Appeals for the Tenth Circuit in *Austin v. Hamilton, supra,* [objective reasonableness] and urged by plaintiffs in this case was sufficiently well-established at the time of Mr. Ricks' detention and death that the defendants cannot claim they are protected by qualified immunity." Having now ruled that the proper standard to measure defendants' conduct is "deliberate indifference," and not the standard of "objective reasonableness," plaintiffs' argument in this regard fails.

Judgment affirmed.

Case No. 96-4027, Barrie v. Grand County

Briscoe, Circuit Judge, concurring:

Although I agree summary judgment for defendants is appropriate in this case, I write separately because I disagree with the majority's conclusion that Fourth Amendment protections against unreasonable seizures cannot be implicated in the suicide of a pretrial detainee. As the majority notes, in Austin v. Hamilton, 945 F.2d 1155, 1160 (10th Cir. 1991), we held the Fourth Amendment provides a constitutional source for substantive restrictions on the treatment of an arrestee detained without warrant. The majority would limit the Fourth Amendment's protection in this context to a narrow type of injury--use of excessive force. However, where the Fourth Amendment applies, it does not prohibit only use of excessive force, but rather prohibits any unreasonable seizure. In looking to the nature of the injury to determine the standard to be applied, the majority ignores the principle that the standard comes not from the classification of the injury the plaintiff suffered, but from the constitutional provision which was violated to cause the injury. See Graham v. Conner, 490 U.S. 386, 394 (1989). Contrary to the majority's apparent conclusion, the mere fact that a claim deals with the denial of adequate medical care does not require application of the deliberate indifference standard. See Youngberg v. Romeo, 457 U.S. 307, 312 n.11, 315 (1982).

I would not hold, at the majority does, that a jail suicide may never be the result of an objectively unreasonable seizure. Whether a seizure is reasonable under

the Fourth Amendment depends on the nature of the seizure and all of the circumstances surrounding it. United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985). The Supreme Court has not held that the Fourth Amendment inquiry into how a seizure is carried out is limited to determining whether excessive force was employed, but rather that the Fourth Amendment protections against unreasonable seizures are at least broad enough to include all claims of excessive force. Graham, 490 U.S. 395. Accepting the premise set forth in Austin[1]--that the Fourth Amendment provides standards applicable to the confinement conditions of an arrestee prior to judicial determination of probable cause--I would permit a claim arising from the suicide of an arrestee detained without a warrant to be analyzed under Fourth Amendment principles. See Pyka v. Village of Orland Park, 906 F. Supp. 1196 (N.D. Ill. 1995) (arrestee suicide claim analyzed under Fourth Amendment); Freece v. Young, 756 F. Supp. 699, 703 (W.D.N.Y. 1991) (same, relying on Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989), which we cited as supporting authority in Austin); Jones v. County of DuPage, 700 F. Supp. 965 (N.D. Ill. 1988). Although, as the majority points out, we have applied the deliberate indifference test to inadequate medical attention claims of pretrial detainees since

---

[1] Although the premise may be open to debate, see Riley v. Dorton, 1997 WL 324381*2 (4th Cir. June 16, 1997) (Fourth Amendment does not extend beyond the point of arrest), we are not free to disregard it here, see United States v. Foster, 104 F.3d 1228, 1229 (10th Cir. 1997) (appellate panel bound by decision of another panel).

Austin, see Howard v. Dickerson, 34 F.3d 978, 980 (10th Cir. 1994); Hocker v. Walsh, 22 F.3d 995, 998 (10th Cir. 1994); Frohmader v. Wayne, 958 F.2d 1024 (10th Cir. 1992), there is no indication that the plaintiffs in those cases asserted their claims under the Fourth Amendment, arguing its objective reasonableness standard should be applied. I do not imply that the numerous cases applying a deliberate indifference standard to inadequate medical assistance or jail suicide cases do so improperly when the plaintiff asserts a substantive due process or Eighth Amendment claim. Recognizing that the Fourth Amendment may apply to this case does not imply that the Fourth Amendment provides the exclusive remedy and that substantive due process does not also apply. See Graham, 490 U.S. at 395 n.10 (recognizing both Fourth Amendment protections and substantive due process protections could apply to same type of injury in pretrial detention period).

Despite my willingness to evaluate plaintiffs' claim under the Fourth Amendment standard, I agree that summary judgment is proper here. Under the totality of the circumstances, defendants' challenged actions do not render the seizure as a whole objectively unreasonable.