**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 15 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICK ANTHONY CIMINO,

      Plaintiff-Appellant,

v.

WILLIAM A. PERRILL, Warden and
all others known and unknown Federal
Detention Center, Englewood,
Colorado; DANIEL FITZGERALD,
Associate Warden; R. J.
ZAMPARELLI, Executive Assistant;
C.M. STRICKLAND, Jail
Administrator; RON FEEDBACK,
F.D.C. Unit Manager; DR.
KOWALSKI, Chief-of-Staff, Medical
Dept.; MARK IPPOLITO, Hospital
Administrator; MR. MAY, Legal
Representative; DR. KRAUS, Staff
Doctor; DR. TSUDA, Staff Doctor;
JUDI SWANSON, Radiologist; BILL
WELCH, Pharmacist,

      Defendants-Appellees.

No. 98-1303
(D.C. No. 97-Z-61)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and

(continued...)

Before **BRORBY**, **EBEL** and **LUCERO**, Circuit Judges.

Plaintiff-Appellant Patrick Anthony Cimino, proceeding pro se, brought a claim under <u>Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narcotics</u>, 403 U.S. 388 (1971), and alleged violations of his constitutional rights that occurred while he was a pre-trial detainee at the Federal Detention Center ("FDC") located in Englewood, Colorado. Cimino alleges that Defendants-Appellants William Perrill, et al. ("Defendants") were deliberately indifferent to Cimino's severe back injuries and that Defendants violated a district court order that required Defendants to improve their medical care. Defendants filed a Motion to Dismiss or Alternatively Motion for Summary Judgment. The motion was referred to a magistrate judge, who recommended granting summary judgment. The district court affirmed and adopted the magistrate's recommendations. This appeal followed. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm in part and reverse in part.[1]

_____

[*](...continued)
conditions of 10th Cir. R. 36.3.

[1] We grant both Cimino's and Defendants' motion to supplement the record on appeal.

We review the grant of summary judgment <u>de novo</u>, applying the same legal standard the district court used. <u>See</u> <u>Kaul v. Stephan</u>, 83 F.3d 1208, 121 (10th Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence and draw reasonable inferences therefrom in the light most favorable to the party opposing summary judgment (i.e., the "nonmovant," who in this case is Cimino). <u>See</u> <u>Byers v. City of Albuquerque</u>, 150 F.3d 1271, 1274 (10th Cir. 1998).

Once the party that asked for summary judgment shows the absence of a genuine issue of material fact, the nonmovant "cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." <u>Craig v. Eberly</u>, No. 97-1308, __ F.3d __, 1998 WL 886748, at * 2 (10th Cir. Dec. 21, 1998) (internal quotations and citations omitted).

Before analyzing the relevant facts, we must first address the medical standard of care owed Cimino. It is undisputed that convicted inmates are protected from "deliberate indifference" to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). Cimino asserts, however, that because he was a pre-trial detainee, he was entitled to greater protection than convicted inmates. This is not the law of the Tenth Circuit. "[I]n this circuit a prisoner, whether he be an inmate in a penal institution after conviction or a pre-trial detainee in a county jail, does not have a claim against his custodian for failure to provide adequate medical attention unless the custodian knows of the risk involved, and is 'deliberately indifferent' thereto." Barrie v. Grand County, Utah, 119 F.3d 862, 868-69 (10th Cir. 1997); see also Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1320 (10th Cir. 1998) ("Although the Eighth Amendment applies only to convicted inmates, the Fourteenth Amendment's Due Process Clause guarantees pretrial detainees the same degree of medical attention as the Eighth Amendment provides for inmates.") (emphasis added).

An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." Barrie, 119 F.3d at 869 (quoting Berry v. City of Muskogee, 900 F.2d 1489, 1496 (10th Cir. 1990)); see also Craig, 1998 WL

886748, at *5. "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 105-06.

Our careful study of the record leads us to conclude that, for all but one of Cimino's claims, there is no genuine issue as to any material facts that Defendants acted with "deliberate indifference." The one claim for which a genuine dispute exists is whether Defendants, knowing the condition of Cimino's back, forced Cimino to carry a sixty-pound mattress down a flight of stairs. (App. Doc. 45, Affidavit ¶ 9; Aplt. Br. at 14.) For all remaining claims, we find as a matter of law that Defendants did not act with "deliberate indifference."

It is undisputed that prior to becoming a pre-trial detainee on May 20, 1996, Cimino had suffered a serious, debilitating back injury that required eight spinal surgeries. (App. Doc. 45, at 5; App. Doc. 43, at 5.) Eight days after incarceration, Cimino was treated by defendant Dr. Kowalski, who prescribed two types of medication (Flexeril and Paracetamol) for pain. (App. Doc. 43, Exhibit A, at 3.) Dr. Kowalski also issued a "Medical Report of Duty Status" that

classified Cimino as medically unassignable for work, required that Cimino sleep in a lower bunk bed with an extra pillow to support his legs, and prohibited Cimino from lifting anything weighing more than ten pounds and participating in any physical recreation other than walking. (Id. Exhibit C.) Three days later, Cimino visited defendant Dr. Tsuda who continued Cimino's Paracetamol prescription. (Id. Exhibit A, at 4.) On June 11, Dr. Kowalski once again treated Cimino, continued to prescribe Paracetamol, and also prescribed Vistaril to help Cimino sleep. (Id. at 5-6.)

On July 9, defendant Dr. Kraus examined Cimino and made a note to work with the FDC Unit Manager to designate Cimino to a rehabilitation-hospital facility. (Id. at 7.) On July 23, Dr. Kowalski treated Cimino, discontinued Vistaril, but prescribed Benadryl for sleep. (Id. at 7-8.) Dr. Kowalski also called Dr. Ken Yonemura, the doctor who performed the most recent surgery on Cimino, to help detail some of Cimino's medical history, which included a fusion at the L5-S1 level of the spine. (Id. at 8.) Three days later, orthopedic surgeon Dr. Peter L. Weingarten, who had reviewed Cimino's films at Dr. Kowalski's request, wrote a letter to Dr. Kowalski. (Id. Exhibit D.) That letter confirmed the fusion at the L5-S1 level and stated that the "overall alignment appears satisfactory."[2]

---

[2] Dr. Weingarten did admit that the "quality of the films is not adequate to fully evaluate the solidity of the fusion or whether or not there is motion during

(continued...)

(Id.)  On July 28, Cimino sent an inmate request to Dr. Kowalski complaining of back problems and asking for Cimino's medical file.  (Id.  Exhibit E.)  This request was "not an emergency." (Id.)  Dr. Kowalski responded that the most "recent x-rays showed no acute changes" and that Cimino was scheduled for an orthopedic surgery consultation. (Id.)

On July 30, Dr. Kowalski ordered a request for consultation for Cimino's history of back trouble, which included spinal trauma, Spondylolisthesis, and multiple surgeries. (Id.  Exhibit F.)  On August 23, Dr. Tsuda treated Cimino for a sore throat, runny nose, and cough. (Id.  Exhibit A, at 11.)  On September 27, defendant Mark Ippolito, the Health Service Administrator, reported a conversation he had with Dr. Yonemura.  (Id. at 11-12.)  Dr. Yonemura stated that his only long-term concerns for Cimino's back were progression of neurological deficit to include central region of the cord, epidural abcer, and instability in the device, and if these were to occur, surgery might be needed. (Id.)  On October 22, Dr. Weingarten examined Cimino for his complaints of a clicking sensation and pain the lumbar region. (Id.  Exhibit H.)  The report from that examination stated that the "click does not appear particularly painful and is soft in quality.  The remainder of the exam is essentially unremarkable.  The mobility of the spine is

---

[2](...continued)
the flexion-extension view." (App. Doc. 43, Exhibit D.)

relatively good at this time, and the patient does not appear to be in severe pain at the time of the exam." (Id.) One week later, Dr. Robert J. Wolk issued a radiologic consultation report, which concluded that the area of Cimino's fusion and the sacrum "appears stable." (Id. Exhibit I.)

On November 6, Dr. Kraus ordered that Cimino be seen by a Health Promotion Disease Prevention consult for physical evaluation and instructions which were to include McKenzie exercises. (Id. Exhibit A, at 13.) On November 12, Dr. Stewart Weinerman, an orthopedic, examined Cimino, and noted that a follow-up on the instructions was to occur once the consult was returned. (Id. at 14.) Two days later, Cimino received refills on Benadryl and Motrin. (Id.) The next day three orthopedic surgeons (including Drs. Weinerman and Weingarten) issued a report after examining Cimino's most recent x-rays. The report concluded that, given Cimino's medical history, which includes eight back surgeries, Cimino "definitely should expect to experience chronic life-long back pain and any additional surgery will certainly not relieve him of all pain." (Id. Exhibit J.) The reported added that Cimino's "management should be conservative with a self-directed exercise program, good back hygiene, and avoidance of trauma. Current treatment program at FCI Englewood is adequate and appropriate. The plan includes regular monitoring by the medical [staff] with

orthopedic back-up.  Presently, non-narcotic pain medication should suffice." (Id.)

On December 2, Dr. Kowalski treated Cimino and provided Benadryl and Paracetamol.  (Id. Exhibit A, at 14-15.)  On December 30, Cimino was treated for bronchitis.  (Id. at 16.)  This was the last time Cimino was treated by Defendants because on January 31, Cimino was transferred to a correctional facility in Texas.

This detailed, chronological history of Cimino's medical records allows us to reach two conclusions.  First, on this record, there is a disputed issue of fact as to whether Defendants forced Cimino, against doctors' orders, to carry a sixty-pound mattress down a flight of stairs.  At this point it would be premature to grant summary judgment on this particular claim because the fact is disputed and, if proven, establishes that Defendants showed deliberate indifference to Cimino's health by creating the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 182-83 (1976)).

On the other hand, Cimino's detailed medical history shows beyond doubt that Cimino was a prodigious user of Defendants' medical facilities and services. It is no surprise that both the magistrate and the district court below characterized the amount of medical care Cimino received as "extensive."  Not only did Cimino receive a vast quantity of medical care, but (aside from the one claim described above) there is nothing in the record to suggest that the quality of care received was cruel and unusual.  Besides the allegation that Cimino was forced to carry a

heavy mattress, there is simply no other evidence of any physical injury to Cimino caused by any acts or omissions of Defendants.  Cimino has offered only conclusory allegations that Defendants intentionally prevented him from receiving proper medical care by falsifying his medical records. (Aplt. Br. at 9-10.)  Such allegations do not fulfill a nonmoving party's obligation when faced with contrary evidence and a motion for summary judgment. See Handy v. Price, 996 F.2d 1064, 1068 (10th Cir. 1993).[3]

Cimino also argues that Defendants engaged in conduct that delayed him from receiving a different course of medical treatment from his outside physicians.  However, as the Supreme Court has explained, "[T]he question whether  . . . additional . . . forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Estelle, 429 U.S. at 107, see also Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993) (stating that differences of medical opinion do not violate a prisoner's constitutional rights).  Moreover, it is undisputed that even after the alleged delay, when three outside orthopedic surgeons reviewed the most updated x-rays of Cimino, those surgeons concluded that Defendants' treatment programs

---

[3] As of yet, the record contains no contrary evidence that Defendants did not force Cimino to carry a heavy mattress, despite the condition of his back.

were "adequate and appropriate." In other words, even if there had been no delay, Cimino would not have received a different form of treatment. Therefore, it cannot be said that the alleged delay violated Cimino's Eight Amendment rights.

Finally, Cimino argues that Defendants were deliberately indifferent in ignoring a court order, issued by the Honorable Judge Daniel B. Sparr during Cimino's criminal case, to improve Cimino's medical care. (Aplt. Br. at 11-12, 14-15.) We reject this argument because Judge Sparr made no such order. Judge Sparr's order in its entirety reads:

> The medical department at the Federal Detention Center is directed to either: (1) submit to the court within ten (10) days of the date of this Order a report indicating the nature of Defendant Cimino's back problem and what, if any treatment is available to him, or (2) show cause in writing within ten (10) days of the date of this Order why such report cannot be furnished.

Defendants were ordered only to submit a report detailing the extent of Cimino's back injuries and the medical care, if any, Cimino received. Defendants were not ordered to improve their medical care.

In sum, the district court properly granted summary judgment for Defendants, except for the disputed fact regarding the heavy mattress. Therefore,

the judgement of the district court is AFFIRMED in part and REVERSED in part.

- 11 -

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge