Peggy Jo HUTTO, and Edward Roy Hutto, a minor by and through his guardian and natural mother Teresa Davidson, Plaintiffs,

v.

Bob DAVIS, individually and in his official capacity, Jarrell W. Broadhead, individually and in his official capacity, Frank Chambers, individually and in his official capacity, Robert Farmer, individually and in his official capacity, Phillip Wood, individually and in his official capacity, and John Does 3–10, Defendants.

No. CIV–96–792–A.

United States District Court, W.D. Oklahoma.

Aug. 1, 1997.

Garland Bloodworth, Nolan R. Hackler, Gary W. Wood, Bloodworth & Associates, Oklahoma City, OK, for Peggy Jo Hutto, Edward Roy Hutto.

John H. Hancock, District Attorney's Office, Norman, OK, David W. Lee, Ambre C. Gooch, Comingdeer & Lee, Oklahoma City, OK, for Bob Davis, Jarrell W. Broadhead.

John H. Hancock, District Attorney's Office, Norman, OK, Rodney C. Ramsey, Christopher R. Kelly, Hall Estill Hardwick Gable Golden & Nelson, Oklahoma City, OK, David W. Lee, Comingdeer & Lee, Oklahoma City, OK, for Frank Chambers.

David W. Lee, Ambre C. Gooch, Comingdeer & Lee, Oklahoma City, OK, for Robert Farmer, Phillip Wood.

## ORDER

ALLEY, District Judge.

Before the Court are motions for summary judgment filed by all defendants on June 5, 1997. Plaintiffs filed a combined response in opposition to all motions on June 30, 1997. For reasons that follow, the Court grants defendants' motions in part.

Cecil Hutto died in the Garvin County jail on June 13, 1995 within hours after being detained on criminal charges. His death was caused by a drug overdose that he suffered because he swallowed a plastic bag containing methamphetamine and the bag ruptured. Peggy Jo Hutto was his wife; Edward Roy Hutto was his son. The persons allegedly responsible for his death are Sheriff Bob Davis, Undersheriff Frank Chambers, and Deputy Sheriffs Jarrell Broadhead, Phillip Wood and Robert Farmer.

All of the defendants had personal contact with Cecil Hutto on June 13, 1995. Lieutenant Broadhead questioned Hutto during his jail admission. Sheriff Davis discussed outstanding warrants with him. Undersheriff Chambers, who is jail administrator, was on duty that day and had two conversations with Hutto as he waited in the booking area. Wood was the jailer on duty throughout Hutto's detention. Farmer came to the jail after Hutto was in a cell and, at Wood's request, checked on Hutto's condition while Wood attended other duties. No one sought medical help until Hutto was found dead at approximately 7:00 p.m.

Plaintiffs seek damages for Hutto's death under federal and state law on the theory that he would have survived if he had received prompt medical treatment. They claim under 42 U.S.C. § 1983 that Hutto was unconstitutionally denied medical care. Alternatively, they bring a supplemental state law claim of negligence. (Second Am. Compl. at 6.)

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, affidavits, and other evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering summary judgment, a court must view all facts and inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, only genuine disputes over facts that might affect the outcome of the case preclude summary judgment. *Id.* at 248, 106 S.Ct. at 2510. "[A] trial judge must bear in mind the actual quantum and quality of proof necessary to support liability" and must determine whether the proffered evidence is sufficient to allow a reasonable jury to find liability. *Id.* at 254, 106 S.Ct. at 2513. If the evidence leads to only one reasonable conclusion, summary judgment is proper. *Id.* at 250, 106 S.Ct. at 2511.

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A movant need only point out an absence of evidence to support an essential element of the non-movant's case. *Id.* at 325, 106 S.Ct. at 2553–54. Then, the non-movant must go beyond the pleadings and set forth specific facts demonstrating a triable issue. *Id.* at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; Fed.R.Civ.P. 56(e).

### ONLY PEGGY JO HUTTO IS A PROPER PLAINTIFF

■ All defendants seek summary judgment against plaintiff Edward Roy Hutto, a minor acting through his mother Teresa Davidson, on the ground he is not a proper plaintiff under either section 1983 or state law. State survivorship law, which also governs survival of section 1983 actions, mandates that Cecil Hutto's widow is the proper party to prosecute claims arising from his death. *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); Okla. Stat. tit. 12, §§ 1053–54 (1981). Plaintiffs concede this point. (Pls.' Br. Opp'n Defs.' Mot. Summ. J. at 18.) Therefore, defendants are entitled to summary judgment on all claims purportedly brought by Edward Roy Hutto.

### DEFENDANTS' LIABILITY UNDER 42 U.S.C. § 1983

■ Pretrial detainees are entitled under the Due Process Clause of the Fourteenth Amendment to the same standard of medical care afforded convicted inmates under the Eighth Amendment. *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir.1994); *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir.1992). A person alleging a violation of this standard must prove that a serious medical need existed and that jail officials exhibited deliberate indifference to the need. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *see Hudson v. McMillian*, 503 U.S. 1, 5–6, 112 S.Ct. 995, 998–99, 117 L.Ed.2d 156 (1992). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000 (citing *Estelle*, 429 U.S. at 103–04, 97 S.Ct. at 290–91). "'A medical need is serious if it is "one that has been diagnosed by a physician as mandating medical treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."'" *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980) (quoting

*Laaman v. Helgemoe,* 437 F.Supp. 269, 311 (D.N.H.1977))). Also, because only unnecessary and wanton infliction of pain violates the Eighth Amendment, the defendant must possess "a sufficiently culpable state of mind." *Hudson,* 503 U.S. at 5, 8, 112 S.Ct. at 998, 999 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991)). A person acts with "deliberate indifference" if he "consciously disregard[s] a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 839, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994).

■ While all defendants had contact with Cecil Hutto during his confinement in the Garvin County jail, it is undisputed that the personal involvement of defendants Davis, Chambers and Broadhead ended when Hutto was booked into the jail and placed in a cell. Sheriff Davis' conversation with Hutto lasted about five or six minutes; Davis left the jail altogether about 30 minutes later. Similarly, Undersheriff Chambers had brief encounters with Hutto on two trips to the coffee machine and left the jail at 4:30 p.m. for a second job. Lieutenant Broadhead received Hutto from the arresting officer and questioned Hutto about his identity, address, and other pertinent information; Wood and others then completed the booking process. The Court agrees with these three defendants (Davis, Chambers and Broadhead) that plaintiff has not demonstrated their deliberate indifference to a serious medical need. Viewing the alleged facts and evidence in the light most favorable to plaintiff, no reasonable juror could find either that Hutto had a serious medical need when he was booked into the Garvin County jail or that defendants whose only contact with him occurred at that time were deliberately indifferent to his condition.

Plaintiff seeks to hold these defendants liable on the theory that immediate medical intervention could have saved Hutto's life. Information obtained at admission suggested that Hutto had swallowed illegal drugs before arriving at the jail. In plaintiff's view, this information together with Hutto's appearance of being under the influence of something should have caused defendants to seek medical treatment immediately. Plaintiff also relies on the fact that Hutto later died to show that his need was serious.

Each defendant's conduct must be judged by information known to him at the time, not by facts that developed later. The facts known to persons who witnessed Hutto's admission to the jail did not indicate a serious medical need. What the record shows, construed in the light most favorable to plaintiff, is that Hutto said he had ingested a controlled substance (how much and what kind was unclear) and he exhibited some symptoms of drug influence while being booked into the jail. Various witnesses have described him as looking "bad" and pale at the time, being "shaky" or nervous, sweating, and seeming "half drunk." No information then available to defendants, however, suggested that Hutto was experiencing a "serious" medical condition, that is, one that a lay person would easily recognize as needing a doctor's attention.

Plaintiff here, like the plaintiff in *Frohmader,* 958 F.2d at 1029, has presented nothing more than "assertions, unsupported by medical evidence, that [the inmate's] need for treatment ... was acute". She has not adduced any medical evidence that Hutto needed immediate treatment when he arrived at the jail between 2:30 and 3:00 p.m. or that he needed it when he was placed in a cell around 4:00 p.m. Nor does plaintiff point to any other evidence in the record from which a reasonable person could conclude that a medical emergency existed at that time. Thus, defendants whose contact with Hutto was limited to the admission process had no constitutional duty to obtain emergency care, as plaintiffs argue. (Pls.' Br. Opp'n Defs.' Mot. Summ. J. at 2, ¶ 5 ("Defendants ... acted with deliberate indifference when they did not send Cecil Hutto to the emergency room to have his stomach pumped.")) Summary judgment is, therefore, appropriate in favor of defendants Davis, Chambers and Broadhead on plaintiff's section 1983 claim for failure to provide medical care.

■ Moreover, plaintiff has not presented sufficient facts or evidence from which reasonable jurors could find deliberate indifference on the part of defendants whose only contact with Hutto occurred during admission. Plaintiff's contrary argument based on *Garcia v. Salt Lake County,* 768 F.2d 303,

307 (10th Cir.1985), is misplaced. In *Garcia*, liability was based on defendants' jailing of an unconscious arrestee suspected of being intoxicated, and on gross deficiencies in staffing and procedures used to monitor him. *Id.* at 308. In contrast, Hutto was not unconscious when he was admitted to the Garvin County jail.

More recently, the court of appeals upheld summary judgment in favor of jail officials sued for denying medical care to an arrestee who was admitted in an intoxicated or drug-induced state described as "being 'semi' coherent with 'poor' ease of movement" and who later became "very incoherent." *Hocker*, 22 F.3d at 998–999. Unlike Hutto, the arrestee in *Hocker* did not die of a drug overdose; she later committed suicide. However, the opinion is instructive. The court of appeals concluded that the plaintiff had not shown deliberate indifference to the decedent's suicidal state because there was insufficient proof of requisite elements, which include: "(1) 'actual knowledge of the specific risk of harm [to the detainee] . . . or that the risk was so substantial or pervasive that knowledge can be inferred;' [and] (2) 'fail[ure] to take reasonable measures to avert the harm'. . . ." *Id.* at 1000 (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1498 (10th Cir.1990) (alterations by the court in *Hocker*)). Summary judgment was found to be appropriate because "[t]hough the staff obviously knew that Ms. Hocker was intoxicated or under the influence of drugs, intoxication with its accompanying incoherence does not, by itself, give Detention Center staff knowledge that Ms. Hocker posed a specific risk of suicide." *Id.*

Plaintiff here claims deliberate indifference to a risk of drug overdose. Yet plaintiff has failed to present sufficient evidence from which a reasonable trier of fact could find that defendants whose personal involvement with Hutto ended at book-in had actual or constructive knowledge of a specific risk that Hutto would suffer a drug overdose. It is undisputed that Hutto stated at some point

that he had swallowed drugs, and he answered "yes" when Lt. Broadhead asked him if he had swallowed a "1/16" or an "8 ball." (Pl.'s Br. Opp'n Defs.' Mot. Summ. J. at 3.) It is also undisputed, however, that Hutto never told anyone he had swallowed a plastic bag of drugs and he gave no indication initially that he had swallowed something that might be lethal or even dangerous. As discussed above, observers of Hutto's condition when he arrived at the jail did not perceive that there was a medical emergency or even that Hutto was experiencing an unusual degree of distress. Knowledge that Hutto had swallowed something and that he was under the influence of drugs does not, by itself, give booking officers knowledge that he posed a specific risk of drug overdose.

Viewing the facts and evidence in the light most favorable to plaintiff, defendants who saw Hutto only during booking had information that he might have ingested some quantity of some illegal drug. They were presented, at most, a situation warranting monitoring and further assessment.[1] There is nothing in the record to suggest that these defendants had actual knowledge of a risk that Hutto had ingested a lethal or even dangerous quantity of drugs, nor do the facts establish a risk so substantial that knowledge of it can be inferred. No reasonable jury could find that defendants Davis, Chambers and Broadhead consciously disregarded a substantial risk of harm to Hutto by leaving the jail or going about their usual duties and entrusting his care to the jailer on duty. Therefore, for the additional reason that plaintiff lacks evidence of deliberate indifference by these defendants, they are entitled to summary judgment on plaintiff's section 1983 claim.

In summary, plaintiff has failed to present specific facts or evidence from which reasonable jurors could find either that Hutto had a serious medical need when he arrived at the Garvin County jail or that defendants whose contact with him was limited to the booking

---

1. The record suggests that jailers followed precisely this course. Hutto was placed in a separate cell that had been used earlier by an inmate who was ill, rather than in the usual "county or felony cell." (Pl.'s Br. Opp'n Defs.' Mot. Summ. J., Ex. B at 19; Ex. C at 2, ¶ H (describing Hutto's cell as the "drunk tank").) After being placed in a special cell, Hutto was monitored more closely than other inmates; the monitoring included Wood's watching Hutto eat his dinner around 4:30 p.m. (Pl.'s Br. Opp'n Defs.' Mot. Summ. J., Ex. B at 27.)

process acted with deliberate indifference to his condition. Thus, defendants Davis, Broadhead and Chambers cannot be held liable under section 1983 for failing to obtain immediate medical treatment for Hutto when he was admitted to the Garvin County jail.

As to Wood and Farmer, however, the Court reaches a different conclusion. Their involvement with Hutto extended much further, to the point that evidence is presented they did nothing while he lay convulsing on the floor of his jail cell while other inmates repeatedly called for help. Genuine issues of material facts exist as to Wood's and Farmer's liability for denial of medical care to Hutto. Therefore, summary judgment is improper on plaintiff's section 1983 claims against defendants Wood and Farmer.[2]

### SUPERVISORY LIABILITY UNDER 42 U.S.C. § 1983

Plaintiff also seeks to hold Sheriff Davis, Undersheriff Chambers, and Deputy Sheriff Broadhead liable as supervisors who allegedly engaged in unconstitutional conduct that caused Hutto to be denied medical care. These defendants have made properly supported motions pointing out an absence of evidence to establish supervisory liability under section 1983. Plaintiff responds with a single paragraph of argument:

> Defendants Davis, Broadhead and Chambers did not properly train or supervise Defendants Wood and Farmer. Defendant Wood testified that he has never been given or asked to read the policy manual. Moreover, he received no formal training for his position as jailer. This is sufficient to impose supervisory liability on Defendants Davis, Broadhead and Chambers.

(Pl.'s Br. Opp'n Defs.' Mot. Summ. J. at 14–15.) Plaintiff's showing as to supervisory liability is patently insufficient.

In *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court identified limited circumstances in which failure to train can create liability under section 1983: "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [trainees] will come into contact." *Id.* at 388, 109 S.Ct. at 1204. The Court cautioned that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city [or official] be liable for such a failure under § 1983." *Id.* at 389, 109 S.Ct. at 1205. The primary issue in deciding liability is whether a particular training program is adequate. "That a particular officer may be unsatisfactorily trained will not alone suffice ... for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91, 109 S.Ct. at 1206. Also, liability requires proof that the identified deficiency is closely related to the ultimate injury, for example, "that the deficiency in training actually caused the [trainees'] indifference to [the plaintiff's] medical needs." *Id.* at 391, 109 S.Ct. at 1206. In this case, plaintiff makes no effort to present any evidence of the sort required under *Canton*.

Similarly, as to supervision, "[l]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence. To be guilty of 'deliberate indifference', the defendant must know he is 'creating a substantial risk of bodily harm.'" *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (citation omitted) (quoting *Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 788 (7th Cir.1995)). Also, "[t]o establish a supervisor's liability under § 1983 [a plaintiff] must show that 'an affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Id.* (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th

---

**2.** Genuine disputes of material facts also preclude summary judgment on their defense of qualified immunity. The law was clearly established in 1995 that deliberate indifference to a pretrial detainee's serious medical need violates the Constitution. The duty to provide such care does not depend on an inmate's request for medical treatment. Defendants provide no legal support for their argument that they could not reasonably have known that Hutto had a constitutional right to receive medical care without requesting it. (Defs. Davis, Broadhead, Farmer & Wood's Br. Supp. Mot. Summ. J. at 29.)

Cir.1988)). Here, plaintiff makes no effort to show any connection between Wood's or Farmer's alleged denial of medical care to Hutto and either an exertion of improper control or a failure to supervise by the other defendants. Nor does plaintiff point to facts or record evidence suggesting that Sheriff Davis, Undersheriff Chambers and Deputy Sheriff Broadhead knew they were creating a substantial risk that medical care would be denied.

Neither plaintiff's conclusory complaint about inadequate training of Wood nor her unsubstantiated claim of inadequate supervision provides a proper basis for imposing liability on Wood's and Farmer's supervisors under section 1983. Therefore, defendants Davis, Chambers and Broadhead are entitled to summary judgment on plaintiff's section 1983 claims against them based their conduct as supervisors.

### SUPPLEMENTAL NEGLIGENCE CLAIMS

Oklahoma law is clear that governmental employees are immune from suit for torts they commit in the course of their employment and that a governmental entity is immune from suit for torts committed in the operation of a jail. *See Purvey v. State,* 905 P.2d 770, 771 (Okla.1995); *Redding v. State,* 882 P.2d 61, 63 (Okla.1994); *Medina v. State,* 871 P.2d 1379, 1383 (Okla.1993); Okla. Stat. tit. 51, §§ 152.1, 153, 155(24). Plaintiff contends, however, that these rules do not apply to her supplemental tort claims because defendants were not acting within the scope of their employment but were guilty of "willful and wanton negligence." (Pl.'s Br. Opp'n Defs.' Mot. Summ. J. at 18–19 (citing *Holman v. Wheeler,* 677 P.2d 645, 647 (Okla. 1983))). Plaintiff bases this argument on her allegation that defendants were deliberately indifferent to Hutto's medical needs, and not merely negligent.

The Court finds this argument unpersuasive. As to defendants Davis, Chambers and Broadhead, plaintiff has failed to demonstrate that these defendants acted with deliberate indifference, as discussed above. As to defendants Wood and Farmer, their duty to obtain medical treatment for Hutto derives solely from their duties as jailers. If their alleged omission of medical care occurred outside the scope of their employment, then plaintiff's negligence claims against them individually would fail. Like the school bus driver in *Cooper v. Millwood Indep. Sch. Dist.,* 887 P.2d 1370, 1375 (Okla. Ct.App.1994), the existence of any negligence claim at all requires that defendants breached a duty imposed on them by virtue of their employment positions. Therefore, plaintiff's only claim against defendants must be brought under Oklahoma's Governmental Tort Claims Act, and the exemption for jail operations applies.

### CONCLUSION

Defendants' motions for summary judgment are GRANTED in part and DENIED in part. Defendants are entitled to summary judgment on all claims brought by Edward Roy Hutto through his mother, Teresa Davidson. Defendants Davis, Broadhead and Chambers are entitled to summary judgment on all plaintiffs' claims against them. Defendants Wood and Farmer are entitled to summary judgment on plaintiff's supplemental negligence claims. Section 1983 claims against defendants Wood and Farmer remain.